ODETTE PAIXAO vs. SARMENTO J. PAIXAO.

Hampden. March 1, 1999. - April 8, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Divorce and Separation,* Oral separation agreement. *Estoppel. Judicial Estoppel. Contract,* Oral separation agreement.

Discussion of cases considering the principle of judicial estoppel [308-310], and its applicability to oral marital separation agreements made in open court in domestic relations cases [310-311].

In a divorce proceeding, where the judge never conducted a colloquy in open court in which the wife acknowledged her assent to the agreement ultimately incorporated into the divorce judgment, judicial estoppel did not preclude the wife's motion to vacate the judgment of divorce nisi and mark the case for trial. [311-312]

COMPLAINT for divorce filed in the Hampden Division of the Probate and Family Court Department on October 19, 1994.

The case was heard by *David G. Sacks,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Wendy H. Sibbison* for Odette Paixao.

*Bradford R. Martin, Jr. (Joan C. Steiger* with him) for Sarmento J. Paixao.

ABRAMS, J. Odette Paixao (wife) filed for a divorce from her husband, Sarmento J. Paixao, pursuant to G. L. c. 208, § 1B.[1]

---

[1]General Laws c. 208, § 1B, deals with contested, no-fault divorces. The wife asserts that, although she filed for divorce under G. L. c. 208, § 1B, the action was converted to a G. L. c. 208, § 1A, divorce when both parties stated under oath that the marriage was irretrievably broken and agreed to the terms of the separation agreement on August 5. General Laws c. 208, § 1A, governs uncontested, no-fault divorces. It requires a "notarized separation agreement executed by the parties."

The husband and wife agree that the divorce was converted to a § 1A divorce. However, the record reveals no evidence of a conversion to a § 1A divorce. The judge issued a judgment of divorce pursuant to § 1B. Moreover, § 1B requires the actual filing of the separation agreement before a divorce is

On August 5, 1997, the parties appeared for trial. After some involvement by the judge, settlement negotiations ensued, and, at the end of the day, the lawyers reported that the parties had reached an oral separation agreement. The highlights of the agreement were read into the record. The judge had a colloquy with the parties, under oath, during which he asked the parties whether they understood the terms of the agreement, whether they had enough time to consider the terms, whether they wanted to speak further with counsel, and whether they believed the agreement to be fair and reasonable. The judge then asked the lawyers to submit a signed agreement the following day. The next day the parties reported that the wife was unwilling to sign the agreement.

On September 8, 1997, new counsel for the wife told the judge that the wife believed that the oral agreement was merely a proposal. After more negotiations, counsel reported that there was once again an agreement. The judge instructed the parties to send the agreement to the court.

On September 30, 1997, the wife's lawyer filed a motion to set a trial date because the wife would not sign the agreement. The lawyer argued that the oral agreement was not entered into freely and willingly by the wife, and that she was confused and under extreme pressure during the August 5 proceedings. The judge held a hearing on the motion on October 20, 1997. The husband's counsel offered a proposed judgment, incorporating what he asserted were the terms agreed to on August 5, as well as his resolution of issues discussed on September 8. The judge denied the wife's motion for a trial date. He signed a judgment granting a divorce under G. L. c. 208, § 1B, and incorporating the husband's proposed agreement, which he found to be fair and reasonable.

The wife appeals, requesting that this court vacate the judgment of divorce nisi and order that the case be marked for trial. We granted the wife's application for direct appellate review. We vacate the judgment and remand for trial.

The wife argues that oral separation agreements are unlawful and unenforceable in the Commonwealth. We conclude that the doctrine of judicial estoppel applies to oral separation agreements, but that judicial estoppel does not apply here.

We have described judicial estoppel as the principle by which

---

converted to a § 1A action, a prerequisite that was not satisfied here. Thus, this action is a § 1B divorce.

"[a] party who has successfully maintained a certain position at a trial cannot in a subsequent trial between the same parties be permitted to assume a position relative to the same subject that is directly contrary to that taken at the first trial." *East Cambridge Sav. Bank* v. *Wheeler*, 422 Mass. 621, 623 (1996), quoting *Gordon* v. *Lewitsky*, 333 Mass. 379, 381 (1955). " 'The primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process.' *United States* v. *Levasseur*, 846 F.2d 786, 792 (1st Cir.[), cert. denied, 488 U.S. 894 (]1988). That concern would be ill served if those intimately involved in that process, litigants, attorneys, and judges, could not rely on declarations of settlement made to the court." *Correia* v. *DeSimone*, 34 Mass. App. Ct. 601, 604 (1993). The reason why oral agreements are honored is that their acknowledgment in open court lends credibility and certainty.

We have had limited opportunity to address the issue of judicial estoppel. We first used the term in *Fay* v. *Federal Nat'l Mtge. Ass'n*, 419 Mass. 782 (1995). We did not decide, however, in what circumstances we would apply the doctrine because the case was controlled by issue preclusion. *Id.* at 788. In *Wheeler*, *supra*, we held that a bank was not judicially estopped from proceeding against a partner on defaulted partnership loans even though the bank had settled, for a nominal sum, its claims on those notes against another partner. *Id.* at 623-624. We stated that we would recognize judicial estoppel "at least where the party to be estopped had been successful in its first assertion of its inconsistent position." *Id.* at 623. We declined, however, "to identify a settlement as representing success for the purposes of judicial estoppel." *Id.* The wife asserts that, by this language, we effectively rejected judicial estoppel. We disagree. Our statement was limited to facts such as those we encountered in *Wheeler*, which involved two separate proceedings and two sets of parties. We merely declined to delineate the specific contours of the doctrine of judicial estoppel. We did not foreclose its applicability in other contexts.

We most recently discussed judicial estoppel in *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176 (1998). In *Blanchette*, an employee of a school committee alleged that the committee retaliated against her for filing a sexual harassment charge. *Id.* at 177. The committee moved to dismiss or for summary judgment, contending that it was inconsistent for the employee to pursue remedies different from those that were

available to her in an arbitration proceeding conducted pursuant to the terms of a collective bargaining agreement. *Id.* at 179, 184. We concluded that judicial estoppel did not apply because the employee's positions were not inconsistent. *Id.* at 185. We again declined to delineate in what circumstances judicial estoppel would apply. *Id.* at 184.

As our cases demonstrate, we have not determined whether judicial estoppel applies in domestic relations cases. The Appeals Court has considered judicial estoppel in the domestic relations context and has concluded that it is applicable. We agree.

In the Appeals Court, judicial estoppel finds its roots in *Dominick* v. *Dominick*, 18 Mass. App. Ct. 85 (1984). In that case, a judge denied the wife's motion to reopen proceedings after she repudiated an oral separation agreement. *Id.* at 87. The agreement had been read into the record, and the parties indicated that they had entered into it freely. *Id.* at 88. A judgment of divorce nisi entered incorporating the terms of the oral agreement. *Id.* at 87. The Appeals Court concluded that the agreement was binding on the parties, *id.* at 88, reasoning that the judge was "entitled to rely on the representations of experienced domestic relations counsel, the fact that each party had been advised by experts in the valuation of marital assets, the answers of the parties to the questions put by the judge, and the comprehensiveness of the agreement, to which no addition of substance was contemplated in the subsequent written agreement."[2] *Id.* at 89.

In *Correia* v. *DeSimone*, 34 Mass. App. Ct. 601 (1993), the Appeals Court invoked the same principle to preclude the defendants in a tort action from denying an oral settlement agreement. *Id.* at 603. Referring to the principle as "judicial estoppel," the Appeals Court described the doctrine as binding a party to his judicial declarations and preventing him from contradicting them in a subsequent proceeding involving the same issues and parties. *Id.*

We agree with the Appeals Court that judicial estoppel applies to oral marital separation agreements. We see no reason why parties seeking a divorce should be treated differently from other litigants. As demonstrated by *Wheeler, supra,* we enforce

---

[2]The portion of the divorce judgment incorporating the oral agreement was vacated on other grounds, which we shall discuss below.

oral settlements between parties in tort actions. In the criminal arena, defendants regularly enter pleas after making the requisite acknowledgments. The same analysis applies to domestic relations cases.[3]

Having determined that judicial estoppel applies in the domestic relations context, the next question is whether judicial estoppel binds the wife in the particular case before us. We conclude that it does not. The judgment granting divorce incorporated the husband's proposed agreement. That agreement incorporated the terms agreed to on August 5, as well as the husband's resolution of the issues raised on September 8. However, the judge conducted a colloquy with the parties only on August 5. There was no colloquy regarding resolution of the issues raised on September 8. There was also no agreement because the judgment offered by the husband was merely a proposed judgment. The theory underlying judicial estoppel is that acknowledgments made by parties in open court under oath are reliable. See *Correia, supra* at 604. The judge never conducted a colloquy in which the wife acknowledged her assent to the agreement that was ultimately incorporated into the divorce judgment. Thus, judicial estoppel is inapplicable, and the wife is entitled to a trial.[4]

Because the wife never acknowledged the agreement incorporated into the divorce judgment, we vacate the judgment

---

[3]We see no conflict between the doctrine of judicial estoppel and Mass. R. Dom. Rel. P. 58 (a). That rule states: "Upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, or upon a *written agreement* for judgment for a sum certain or denying relief, the court shall forthwith prepare, sign and enter judgment . . ." (emphasis supplied). The wife urges that the judgment violated the rule because there was no written agreement. We disagree. It is doubtful that the rule intended the incongruous result that written agreements be enforced but not oral agreements acknowledged in open court under oath. See *Savage* v. *Blanchard*, 148 Mass. 348, 349 (1889) ("the statute [requiring a writing] plainly is not intended to apply to an agreement . . . made in open court and acted on by the court").

[4]Before a divorce judgment pursuant to an oral agreement may enter, the judge must also determine that the agreement was fair and reasonable. The judge must make findings *on the record* as to each of the following factors: "(1) the nature and substance of the objecting party's complaint; (2) the financial and property division provisions of the agreement as a whole; (3) the context in which the negotiations took place; (4) the complexity of the issues involved; (5) the background and knowledge of the parties; (6) the experience and ability of counsel; (7) the need for and availability of experts to assist the parties and counsel; and (8) the mandatory and, if the judge deems it ap-

of divorce nisi. The case is remanded to the Probate Court for trial.[5]

*So ordered.*

---

propriate, the discretionary factors set forth in G. L. c. 208, § 34." *Dominick* v. *Dominick,* 18 Mass. App. Ct. 85, 92 (1984).

[5]When a party is clearly ambivalent regarding an oral settlement, as was the wife, a judge should set the case down for trial.