In re Nancy L. COX, Debtor.

**Richard Cox, Plaintiff,**

v.

**Nancy L. Cox, Defendant.**

**Bankruptcy No. 98–43413–HJB.**
**Adversary No. 98–4212.**

United States Bankruptcy Court,
D. Massachusetts.

March 31, 2000.

John O. Desmond, Framingham, MA, for Nancy L. Cox, defendant.

John S. Legasey, Lisa Stern Taylor, Salem, MA, for Richard E. Cox, plaintiff.

### *MEMORANDUM OF DECISION*

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court for determination is a "Motion for Summary Judgment and for Abstention as to Count III of Debtor's Counterclaim;" as well as a "Motion to Dismiss or for Relief from the Automatic Stay." Both are filed by the plaintiff Richard Cox (also the defendant in counterclaim; hereinafter, the "Plaintiff") against the debtor Nancy L. Cox (the defendant and plaintiff in counterclaim; hereinafter, the "Debtor").

In their multiple pleadings, the parties raise a number of issues arising out of the legal maneuvers surrounding their contentious divorce. The Plaintiff requests court abstention from further involvement in this case and/or that this Court impose a constructive trust. He alleges that the Debtor has made preferential and fraudulent transfers, and committed various other bankruptcy sins demonstrating her bad faith—grounds, he says, for dismissing this case. The Debtor raises multiple defenses and argues that the Plaintiff is estopped by virtue of, she says, his breach of their separation agreement.

The center of the vortex of claims and counterclaims is the effect of a Massachusetts Appeals Court decision. That decision nullified various orders of the Massachusetts Probate and Family Court ("the Probate Court"), pursuant to which certain property had been transferred from the Plaintiff to the Debtor prior to the commencement of this case. The Plaintiff seeks to realize his rights as articulated by the Appeals Court. He wants his property back. The Debtor raises the Bankruptcy Code as a shield.

## I. Facts

The facts necessary to dispose of these matters are uncontested. At one time, the Plaintiff and the Debtor were husband and wife. They divorced in 1994 by decree of the Probate Court. At the time of the divorce, the Plaintiff and the Debtor entered into a separation agreement, which was incorporated into the final judgment of divorce. That separation agreement dealt, inter alia, with various issues relative to the division of their joint and individually held property. One of those issues involved a parcel of real estate located in Lynnfield, Massachusetts (the "Property") which the Plaintiff's father had transferred to the Plaintiff during the marriage. When the parties separated, the Plaintiff transferred the Property back to his father. In the divorce proceedings, the Debtor claimed that the transfer was fraudulent. The issue was settled in the separation agreement. The Property was to be transferred back to the Plaintiff and the Debtor would have no claim thereto, but the Debtor's right to increased alimony payments based on the income from the Property would be preserved.[1]

Approximately one year later, the Debtor filed a motion to vacate the divorce decree (the "Motion to Vacate"). Surprisingly, she claimed, inter alia, that the Plaintiff failed to disclose his interest in the Property on his financial statement filed in the divorce proceedings. Shortly thereafter, the Plaintiff filed a motion to reduce his alimony payment to the Debtor. The Plaintiff claimed decreased income on account of an alleged loss of employment. After hearing, the Probate Court (1) vacated the portion of the divorce judgment pertaining to the division of marital assets, and ordered the Plaintiff to pay, with interest, $127,120.00 to the Debtor[2] and another $30,000.00 to her counsel; and (2) ordered that Qualified Domestic Relations Orders ("QDROs") in favor of the Debtor be issued with respect to certain of the Plaintiff's pensions (the "Pensions")[3] (jointly the "Probate Court Orders"). Second, the Probate Court entered an order modifying the Plaintiff's alimony obligation to the Debtor. Weekly alimony was decreased from $500.00 per week to $250.00 per week (the "Modification Judgment").

The Plaintiff appealed the Probate Court Orders, but not the Modification Judgment, to the Massachusetts Appeals Court (the "Appeals Court"). The Probate Court denied his request for a stay of the Probate Court Orders pending appeal.[4] Accordingly, the Plaintiff complied with the Probate Court Orders by making the ordered payments and executing the QDROs. However, when the Appeals Court reached the merits of the appeal, it determined that the Probate Court had erred. On March 20, 1998, the Appeals Court vacated the Probate Court Orders, declared them nullities, and ordered the parties to return to the Probate Court and seek such relief as was necessary to return the parties to *status quo ante*.[5] On April 1, 1998, the Plaintiff filed a motion in the Probate Court, seeking a return of his payments to the Debtor and her counsel, nullification of the QDROs, and reimbursement of other expenses (the "Motion to Restore"). The Probate Court heard that motion on April 27, 1998, but before its decision, the Debtor filed the instant Chapter 13 case on May 7, 1998, listing the Pensions as assets in her schedules. On

---

**1.** The Property is a commercial building subject to a long term lease to the United States Postal Service. It is clear from the record that the Debtor was aware of both its existence and its value at the time she entered into the separation agreement.

**2.** This amount represented the Probate Court's determination of fair compensation for the Debtor's share of the equity in the Property (the "Equity Claim").

**3.** These orders effected a transfer of the future income stream of the Pensions to the Debtor.

**4.** The record does not reflect whether a similar request was made to the Appeals Court.

**5.** *See* Order of March 20, 1998, Docket No. 96–P–1214.

May 27, 1998, apparently without actual knowledge of the bankruptcy filing and the applicability of the automatic stay, the Probate Court issued an order affording the relief sought by the Plaintiff, in compliance with the instructions of the Appeals Court.

The Plaintiff began his effort in this Court by seeking dismissal of the case, or in the alternative, a declaration that the automatic stay was inapplicable to the Pensions. After a hearing on that motion, this Court directed the Plaintiff to file an adversary proceeding, the appropriate vehicle with which to seek determinations as to title (*see* Fed.R.Bankr.P. 7001(2)). The Plaintiff did so, and then filed the instant Motion for Summary Judgment. After further hearing, both the Motion to Dismiss and the Motion for Summary Judgment were taken under advisement.

## II. *Claims and Positions of the Parties*

### A. *The Motion for Summary Judgment*

The Plaintiff claims that the Debtor has no interest in the Pensions, and, therefore, the bankruptcy estate has no interest in or claim against these assets. He argues that the Appeals Court order, declaring the Probate Court order transferring the Pensions to be a nullity, eradicated the legal effect of the transfer, and stripped the Debtor of any rights in the Pensions. The Debtor, in contrast, claims that the Plaintiff is judicially estopped from claiming any interest in the Pensions because of his intentional concealment of the Property in his divorce-related financial statement; or that the Plaintiff failed to timely object to the Debtor's claim of exemptions in the Pensions. Alternatively, the Debtor argues that the Plaintiff's claim to the Pensions is dischargeable.

---

6. In addition, Count III of the Counterclaim contains the Debtor's objections to the award of interest and attorney's fees requested by the Plaintiff, and objections to the claims of the Plaintiff because of the preferential transfer (see Count I) and failure to turn over estate property (see Count II), under 11 U.S.C. § 502(d).

The Debtor has also made several counterclaims. In Count I, she alleges that the Appeals Court order nullifying the Probate Court order transferring the Pensions to her, was a transfer within the meaning of 11 U.S.C. § 101(54), and avoidable under § 547. Count II contains a claim for turnover of estate property under § 542. The Debtor alleges that the Appeals Court order vacated not only the Probate Court Orders, but also the Modification Judgment which decreased the amount of alimony the Plaintiff was to pay the Debtor weekly. She thus contends that she is entitled to a turnover of $23,833.48 in back alimony payments, representing the $250.00 per week difference between the original and amended amounts. Under Count III, the Debtor objects to the Plaintiff's proofs of claims, contending that the Plaintiff is in breach of their separation agreement by virtue of his failure to maintain life insurance for the benefit of the Debtor (or, at least, his failure to provide evidence of the same).[6]

In his answer to the Debtor's counterclaims, the Plaintiff essentially denies the Debtor's claims on the grounds of judicial estoppel, collateral estoppel, *res judicata*, failure to state a claim on which relief can be granted, and the Debtor's alleged lack of any property interest in the Pensions.[7] The Plaintiff also requests that this Court abstain as to Count III of the Debtor's Counterclaim, on the basis that the issues raised therein have been addressed by the Probate Court, acting on the Plaintiff's Motion to Restore.[8]

### B. *The Motion to Dismiss*

In his Motion to Dismiss, the Plaintiff alleges that the Debtor filed her petition in bad faith. He argues that this case repre-

---

7. As part of his Answer, the Plaintiff also denies that any debt owed to him by the Debtor would be dischargeable.

8. It is not altogether clear from the pleadings and argument presented to this Court whether the parties agree that the Probate Court's action on this motion was void as violative of the automatic stay.

sents essentially a two-party dispute, and that the Debtor's bad faith is demonstrated by a declaration of homestead which the Debtor recorded with respect to her home in violation of a Probate Court order enjoining the Debtor from encumbering her assets; by her bankruptcy petition allegedly timed to impose the automatic stay after the Appeals Court decision had been rendered, but before the Probate Court could act on that decision; and by the meritless Motion to Vacate which led to all of these problems.

In her answer to the Motion to Dismiss, the Debtor asserts that the Plaintiff is not entitled to relief from the automatic stay, that any debts she owes him are dischargeable, and that she does have equity in the Pensions.[9] The Plaintiff responds by claiming additional alleged facts to show that the Debtor filed her petition in bad faith. He contends that the Debtor undervalued certain assets (a condominium, jewelry and a vehicle), misused her exemptions, failed to pursue a claim for legal malpractice against the attorney who brought her Motion to Vacate, and, prepetition, sold nearly $20,000.00 in stock to preferentially repay certain creditors, which transfers constitute voidable preferences. In addition, he argues that the Appeals Court order nullified the transfer effected by the original Probate Court Orders, and, therefore, the Pensions, as a matter of law, remained property of the Plaintiff. Further, the Plaintiff argues that the Appeals Court—and later the Probate Court—found evidence of the Debtor's wrongdoing sufficient to justify imposing a constructive trust with respect to the Pensions. Finally, he argues that he is not judicially estopped from asserting his claims by virtue of his alleged misfeasance or malfeasance in the Probate Court. The Plaintiff claims that the original Probate Court findings, which provide the basis for

that argument, were nullified by the Appeals Court, and should have no significance; and further, that the Appeals Court did not credit the argument that the Plaintiff engaged in inequitable behavior. That finding by the Appeals Court should, according to the Plaintiff, have preclusive effect in these proceedings.

### III. *Discussion*

#### A. *The Motion to Dismiss*

As a threshold matter, the Court must determine whether the Chapter 13 case should be dismissed on the basis of the Plaintiff's argument that the petition was filed in "bad faith." In support, the Plaintiff points to the declaration of homestead, the timing of the case filing, the problematic Motion to Vacate, as well as his contention that the Debtor improperly undervalued her assets, misused her exemptions, failed to pursue a legal malpractice claim against the attorney who filed the Motion to Vacate, and sold stock to fund certain allegedly preferential transfers.

 Motions to dismiss a petition filed under Chapter 13 are governed by § 1307(c). That section does not specifically make reference to "bad faith" as a grounds for dismissal of a petition, but this Court has recognized that bad faith may constitute cause for dismissal. *See* 11 U.S.C. § 1307(c) (allowing· dismissal for cause and setting forth a non-exhaustive list of what "for cause" may entail); *In re Spear*, 203 B.R. 349, 352 (Bankr.D.Mass. 1996) (pattern of abuse of the Code whereby debtor repeatedly filed her petition to impose the automatic stay and then requested voluntary dismissal without prejudice prior to a dismissal under § 109(g) for failure to file schedules and plan). The Bankruptcy Appellate Panel for the First Circuit (the "First Circuit B.A.P.") agrees. In the recent case of *In re Keach*, 243 B.R.

---

**9.** She specifically claims that her obligation to return the Pension funds under the Appeals Court and subsequent Probate Court order (if the latter has any effect) are dischargeable as obligations arising prepetition out of a property settlement adjunct to a divorce proceed-

ing. Alternatively, she argues that no constructive trust should be imposed with respect to the Pensions, because Massachusetts law requires fraud, breach of fiduciary duty, or other misconduct before that remedy will be applied. She contends there was none.

851 (1st Cir. BAP 2000), the First Circuit B.A.P., after engaging in an exhaustive analysis of case development, arrived at a simple conclusion. "The meaning of good faith is simple honesty of purpose." *Id.* at 868. The meaning of bad faith is presumably the opposite.

 Here, there is no evidence of the Debtor's lack of intent to perform her obligations under the Bankruptcy Code. She has filed her schedules and plan, although the plan has not yet been confirmed.[10] Nor is this Court able to find dishonesty in the Debtor's actions *in connection with this case* at a level sufficient to justify its dismissal. The Debtor's declaration of homestead recorded within a few days prior to her bankruptcy filing does not appear to be in violation of the Probate Court's injunction against any encumbrance of the Debtor's assets. A declaration of homestead is not an encumbrance, but a state law method of exempting property from the claims of creditors. An encumbrance constitutes a transfer of a property interest. It is well settled in this district that a claim of exemption does not constitute a transfer. *Feinman v. Messia (In re Messia),* 184 B.R. 176, 177 (Bankr.D.Mass.1995); *In re Van Rye,* 179 B.R. 375, 377–78 (Bankr. D.Mass.1995), *aff'd.* 96 F.3d 1430, 1996 WL 521185 (1st Cir.1996). See also *In re Miller,* 113 B.R. 98, 104–5 (Bankr.D.Mass. 1990). Therefore, the Plaintiff's argument that the recording of the declaration of homestead violated the Probate Court's order prohibiting encumbrances can not be sustained. Nor is the timing of the filing of the bankruptcy case particularly germane to the question of the Debtor's good faith. True, the Debtor filed the case to obtain the benefit of the automatic stay and prevent the Probate Court from considering the Motion to Restore, which would have given effect to the Appeals Court order. However, many debtors postpone filing until they are on the brink of disaster. A finding of good faith does not demand that a debtor file a bankruptcy case only when he or she does not need the automatic stay.

 The Motion to Vacate, which the Appeals Court found to be "at the very least, inexplicable" (Appeals Court Memorandum and Order, attached as Exhibit 6 to p. 6 of Memorandum in Support of Motion for Summary Judgment) is similarly not a sufficient basis for a finding of bad faith *in this* case. *Keach* counsels against grounding a bad faith determination on the Debtor's prepetition conduct. *Keach,* 243 B.R. 851 at 871.

 The schedules filed by the Debtor (as amended and updated) do appear to undervalue her assets, but the Plaintiff does not allege that she omitted any material assets, and the Plaintiff is free to challenge the valuation assigned by the Debtor or any exemption claimed.[11]

10. The Chapter 13 Trustee filed an Objection to Plan Confirmation on July 13, 1998. After a hearing, this Court took the matter under advisement. The thrust of the Trustee's objection related to the filing of the declaration of homestead by the Debtor, and her subsequent claiming of the homestead exemption in her schedules. The Trustee argued, consistent with this Court's holding in *In re Fracasso,* 210 B.R. 221 (Bankr.D.Mass.1997), that because the Debtor had filed her homestead declaration after incurring the debts included for discharge in her petition, the Debtor could not use the declaration of homestead to shield the equity in her residence from the claims of her creditors; and that since the plan did not provide a dividend equal to or greater than what creditors would have received under Chapter 7 (after including the equity in her residence), confirmation should be denied. However, *Fracasso* has been overturned. *See Fracasso v. Reder (In re Fracasso),* 222 B.R. 400 (1st Cir. BAP 1998), *aff'd* 187 F.3d 621, 1999 WL 529529 (1st Cir.1999); *see also In re Weinstein,* 164 F.3d 677 (1st Cir.1999). Therefore, the Trustee's Objection is no longer predicated on good law, and must be overruled without prejudice to the Trustee's right to bring further objections based on other grounds, should the circumstances warrant in light of this opinion.

11. In the case where a debtor simply fails to disclose assets, the creditor has no ability to measure the debtor's valuation or compliance with 11 U.S.C. § 1325(a)(3) and (a)(4). Here, the Debtor has made the required disclosure, and the parties are free to debate the valua-

The Plaintiff refers specifically to the exemption claimed for the Debtor's residence, arguing that the value assigned was too low by $3,000.00—where she claimed a value of $97,000, he asserts the condominium is worth at least $100,000.00. And as to the jewelry and the automobile, the Plaintiff does not argue that the Debtor is not entitled to these exemptions, he merely contests the amount of value she is claiming as exempt.[12]

 The Plaintiff also points to the Debtor's failure to pursue a potential legal malpractice claim against the attorney who brought the Motion to Vacate. This failure may be due to any number of different factors, not the least of which might be the sheer difficulty of succeeding at such a claim under Massachusetts law. Surely, it would be unfair to ground a bad faith determination on the Debtor's failure to sue a third party. Finally, the Plaintiff argues that the Debtor preferentially transferred funds she obtained through the sale of stocks which were presumably non-exempt assets. Again, without more, the proper remedy for such actions would be to challenge the confirmation of the plan under § 1325(a)(4).[13]

In summary, taken separately and together, the various complained of alleged actions of the Debtor, even if true, do not appear to rise to a level which could be fairly described as a lack of "honesty in purpose" in the filing of her bankruptcy case. The Motion to Dismiss must be, accordingly, denied.

### B. *The Motion for Summary Judgment*

The disputes underlying this complex set of allegations, claims and counterclaims revolve around the status of the Pensions and the Plaintiff's prepetition payments to the Debtor, both of which were to be returned to the Plaintiff by virtue of the Appeals Court order vacating the Probate Court award. The analysis with respect to the Pensions on the one hand and the claim for return of the Plaintiff's payments on the other, differ and must therefore be separately examined.

 However, before proceeding to those different analyses, the effect of the Appeals Court order should be explored. It is well recognized that while bankruptcy law governs the treatment of a claim in the bankruptcy process, it is state law that determines the existence, allowability and extent of the underlying claim. *See In re Morton Shoe Co., Inc.*, 40 B.R. 948, 949 (Bankr.D.Mass.1984); *In re Westmoreland Coal Co.*, 213 B.R. 1, 6 (Bankr.D.Colo. 1997). Thus, state law will determine the impact of the Appeals Court ruling on the Debtor's rights, and consequently the estate's rights in both the Pension funds and the judgment amount.

The Appeals Court found that there was no basis for the Probate Court's order vacating its original approval of the settlement agreement. No fraud on the Probate Court had been perpetrated, the Appeals Court said, and therefore the Probate Court could not "undo what the parties had knowingly, voluntarily, and with the assistance of counsel, agreed to

tion issue. Without more, a difference in a valuation determination is insufficient to demonstrate bad faith on the part of the Debtor. *Compare In re Blaise*, 219 B.R. 946 at 951 (2nd Cir. BAP 1998) (debtor's failure to disclose three vehicles and a plot of land tended to show Debtor's bad faith in failing to "play by the rules").

12. The Plaintiff also argues that the Debtor's liquidation analysis in her Chapter 13 plan demonstrates her bad faith. This argument is better directed to an objection to plan confir-

mation for failure to comply with the requirements of 11 U.S.C. § 1325(a)(4).

13. Under Chapter 7, a trustee in bankruptcy would have the power to avoid fraudulent and preferential transfers, thereby increasing the assets in the estate and the overall payout to creditors. Therefore, where such avoidance actions would be successful in Chapter 7, a Chapter 13 Debtor must propose a plan which would equal or exceed the payout to creditors under Chapter 7, taking into account the value of the avoidance actions.

do." Therefore, the Appeals Court concluded, "all orders arising out of the allowance of the motion to vacate and the entry of the amended judgment were nullities."

■ Black's Law Dictionary defines a nullity as "nothing; no proceeding; an act or proceeding in a cause which the opposite party may treat as though it had not taken place, or which has absolutely no legal force or effect." Black's Law Dictionary 1067 (6th ed.1990). Therefore, according to the order of the Appeals Court, the Probate Court's order vacating the property division under the divorce judgment was void—to be treated as if it had never entered. *See Price v. Cole*, 31 Mass. App.Ct. 1, 4, 574 N.E.2d 403, 405 (Mass. App.Ct.1991) (" 'annulling' means to declare that something has never existed"); *In re Audre, Inc.*, 216 B.R. 19, 29 (9th Cir. BAP 1997) ("a void judgment being one which from its inception was a complete nullity and without legal effect"). Based on principles of comity and federalism, this Court will not disturb the judgment of the Appeals Court.

### 1. *The Pensions*

#### a. Judicial Estoppel

■ As a preliminary matter, the Debtor argues that the Plaintiff is judicially estopped from claiming any interest in the Pensions because of his concealment of the Property and the Pensions in his financial statements filed as part of the divorce proceedings. Judicial estoppel assures that "[a] party who has successfully maintained a certain position at a trial cannot in a subsequent trial between the same parties be permitted to assume a position relative to the same subject that is directly contrary to that taken at the first trial." *Paixao v. Paixao*, 429 Mass. 307, 309, 708

N.E.2d 91, 93 (Mass.1999) *citing Gordon v. Lewitsky*, 333 Mass. 379, 381, 131 N.E.2d 174 (Mass.1955); *see also Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6 (1st Cir. 1999). Judicial estoppel will apply where the party to be estopped was successful in its first assertion of its inconsistent position. *See Paixao v. Paixao*, 708 N.E.2d at 93.

■ In this complex set of proceedings, it is difficult to state with any degree of certainty what position the Plaintiff took at Probate Court hearings with regard to the Pensions.[14] However, the Appeals Court specifically found that no fraud on the court had occurred. "[T]he primary concern of the doctrine of judicial estoppel is to protect the integrity of the judicial process." *Paixao*, 708 N.E.2d at 93 *citing United States v. Levasseur*, 846 F.2d 786, 792 (1st Cir.1988), *cert. denied* 488 U.S. 894, 109 S.Ct. 232, 102 L.Ed.2d 222 (1988). Here, the Appeals Court acted to protect the judicial process by reversing the Probate Court order granting the Motion to Vacate. In summary, given the tortuous history of this case, this Court cannot find an inconsistent position taken by the Plaintiff, nor do any of the policy goals of the doctrine of judicial estoppel apply.

#### b. Claims of Exemption and Dischargeability

■ The Pensions represent a property interest of the Plaintiff in a right to receive payments starting at a certain date (age 65, with the option of taking lower payments starting at age 55).[15] These bundles of rights were transferred to the Debtor pursuant to the Probate Court Orders. These orders were nullified by the Appeals Court in its decision. Therefore, it is as if legal title to the Pensions never passed from the Plaintiff to the Debtor,

**14.** Judicial estoppel applies in domestic relations cases. *See Paixao*, 708 N.E.2d at 94. The doctrine has been used to prevent a spouse from reopening divorce proceedings after the entry of a judgment of divorce nisi which incorporated an oral separation agreement. *See Dominick v. Dominick*, 18 Mass. App.Ct. 85, 463 N.E.2d 564 (Mass.App.Ct.

1984). Thus, lack of a formal trial does not necessarily bar application of the doctrine.

**15.** The Debtor argues that the Plaintiff holds merely a claim for the amount of the Pensions. This argument misconstrues the nature of the pension rights and the effect of the Appeals Court order.

and the Debtor was left with no property rights therein. This is true notwithstanding the Appeals Court's remand to the Probate Court for the purposes of restoring the *status quo ante,* which decision was not rendered by the Probate Court until after the Debtor filed her bankruptcy petition. True, several issues remained to be resolved by the Probate Court after the Appeals Court decision, including the Plaintiff's entitlement to attorney's fees, restoration of the attorney's fees (and interest) paid by the Plaintiff to the Debtor, and other ancillary matters.[16] However, none of these issues changes the nature of the Appeals Court order, which nullified the underlying transfer of the Pensions. Because the Debtor had no rights in the Pensions, they were not property of the bankruptcy estate. The Debtor therefore has no rights in the Pensions to claim as exempt. Likewise, the Plaintiff has full ownership of the Pensions, not a claim against the estate for their value.[17] Thus, the Debtor's arguments that the Plaintiff should have objected to the Debtor's ex-emptions and/or that the Plaintiff's claim is dischargeable must fail.

### c. Preferential Transfer

 The Debtor also claims that the Appeals Court order was a transfer within the meaning of § 101(54), and that, because it was made within 90 days of her filing, it is a voidable preference under § 547.[18] Section 547(b) sets out the elements which must be proven to support a prima facie claim for avoidance.[19]

 A "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). This definition is "as broad as possible." S.Rep. No. 989, 95th Cong., 2nd Sess. 27 (1978). However, notwithstanding the breadth of the definition contained in § 101(54), the debtor must have some interest in the property at issue to succeed

---

16. Even the apparent need of the Plan Administrator for a specific order nullifying the earlier QDRO's transferring the Pensions from the Plaintiff to the Debtor does not affect the actual property interests in the Pensions. Such an order is required only to comply with Federal tax laws and ERISA regulations.

17. If moneys had been removed from the Pension funds, the Plaintiff might have a claim for such amounts. However, no such assertion has been made.

18. Section 547 sets out the trustee's avoidance powers. It is widely recognized that a debtor under Chapter 13 may exercise these avoidance powers, if she complies with § 522(h). *See Callanan v. International Fidelity Ins. Co. (In re Callanan),* 190 B.R. 137, 138–39 (Bankr.D.Mass.1995) (debtor has standing to bring avoidance action; to succeed, must comply with § 522(h)); *See also In re Toronto,* 165 B.R. 746, 751 (Bankr.D.Conn. 1994). Section 522(h) allows a debtor to bring an avoidance action if the trustee could have brought the action but did not, the transfer was involuntary and the debtor did not conceal the property, or the debtor could have avoided the transfer under § 522(f)(1)(B). *See Callanan,* 190 B.R. at 139. The Debtor here is bringing an action that could have been brought by the trustee to recover an involuntary transfer of property which she did not conceal. She therefore meets the requirements of § 522(h), and thus has standing to bring her avoidance action.

19. Section 547(b) provides that:

"[T]he trustee may avoid any transfer of an interest of the debtor in property—
(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made—
 (A) on or within 90 days before the date of the filing of the petition; or
 (B) between 90 days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—
 (A) the case were a case under chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provisions of this title.''

in claiming that a preferential transfer has occurred. Here, the Debtor had no such interest. The Appeals Court order nullified the original transfer, rendering it void from its inception and without legal significance. *See Lingley v. Stuart Shaines, Inc. (In re Acme–Dunham Inc.)*, 50 B.R. 734, 737 (D.Me.1985) (for transfer to be preferential, it must diminish the fund to which creditors may legally resort for the payment of their debts); *see also* 11 U.S.C. § 541(d) (excluding from property of the estate any equitable interest in property in which the debtor holds only legal title). The Debtor could not transfer what she did not own.

For the same reason, the transfer did not allow the Plaintiff to receive more than he would have received under the hypothetical liquidation contemplated in 11 U.S.C. § 547(b)(5). The Appeals Court, in nullifying the original transfer, restored the Pensions to the Plaintiff, as if the original transfer had never occurred. The Pensions were thus never property of the estate, and the Plaintiff received exactly what he would have from a Chapter 7 liquidation.[20]

## 2. *The Equity Claim*

In addition to nullifying the Probate Court order which transferred the Pen-

---

**20.** Nor has this alleged transfer reduced the fund to which creditors of the same class can legally resort for the payment of their debts, since the Pensions are not property of the estate. *See Lingley v. Stuart Shaines, Inc. (In re Acme–Dunham, Inc.)*, 50 B.R. 734, 737 (D.Me.1985).

**21.** The $30,000.00, plus $1,075.00 in interest, was assessed against both the Debtor and her attorney, and thus it was included in the judgment against the Debtor by the Probate Court. It is not clear whether the judgment was paid by the attorney in response to the order of the Probate Court.

**22.** The Proof of Claim was $251,974.29, and was filed as a non-priority unsecured claim. It was calculated as follows:

| | |
|---|---|
| $127,120.00 | payment due on nullified Probate Court order |
| $ 31,075.00 | return of Debtor's counsel's fees |
| $ 39,526.80 | interest on nullified order, 5/31/96—6/30/98 |

---

sions from the Plaintiff to the Debtor, the Appeals Court order also nullified the portion of the Probate Court order which had granted an award of $127,120.00, and $30,000.00 in attorney's fees, plus interest, to the Debtor, representing a percentage of the equity in the Property (the "Equity Claim").[21] While the Pensions represent an identifiable corpus of property—a bundle of rights to future payments, the Equity Claim, in contrast, represents monies owed the Plaintiff on account of the amounts the Plaintiff paid to the Debtor.

■ The Bankruptcy Code defines a claim as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). The Probate Court ordered the Plaintiff to pay certain sums to the Debtor. He did so. That order was later nullified by the Appeals Court. The obligation to repay those sums constitutes a claim under the Bankruptcy Code.

### a. Abstention

The Plaintiff has filed a Proof of Claim in the amount of $251,974.29,[22] to which the Debtor has objected on various grounds.[23]

---

| | |
|---|---|
| $ 54,252.49 | Plaintiff's attorney's fees |
| $251,974.29 | Total Claim |

**23.** The Debtor cites several bases for the Objection. She denies that there is any basis for liability for interest or attorney's fees, and claims that the claim should be disallowed because Plaintiff had received a preferential transfer (the Pensions); failed to turn over estate property (the alimony the Debtor claims is due under Count II of her counterclaim); and breached the Separation Agreement (failure to maintain life insurance as required by the Probate Court-approved Agreement). After combing through the Debtor's list of grounds for objecting to the claim of the Plaintiff, it is clear to this Court that the Debtor has not clearly articulated an objection to the portion of the Plaintiff's claim that represents the core of his request—the return of the $127,120.00 paid pursuant to the later-nullified Probate Court order. However, given the existence of the claim, and the generally pleaded objection, this Court will

The Plaintiff responded by requesting that this Court abstain from hearing the Debtor's objection (and presumably the Plaintiff's Proof of Claim) in favor of the Probate Court, arguing that "[g]iven the fact that the issues raised have already been heard by the Probate Court, the Probate Court is extremely familiar with this matter and with the law relating thereto, and the fact that it has already spent considerable time in reviewing plaintiff's claim against the Debtor, the interests of justice and comity make abstention appropriate in this case...." (Plaintiff's Memorandum in Support of Motion for Summary Judgment and Abstention, p. 12.) The Debtor responds by arguing that this Court has exclusive jurisdiction over the property of the Debtor, and therefore the court should not abstain from considering the claim and objection. (Debtor's Memorandum in Support of Debtor's Objection to Motion for Summary Judgment and Abstention, p. 7).

 Section 1334(c) governs abstention in bankruptcy proceedings.[24] Mandatory abstention under § 1334(c)(2) [25] prevents a district court from "hearing a non-core matter which can be timely adjudicated in state court in a previously commenced action." *S.G. Phillips Constructors, Inc. v. City of Burlington, Vermont (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 708 (2nd Cir.1995). *Accord, In re CRD Sales and Leasing, Inc.*, 231 B.R. 214, 218 (Bankr.D.Vt.1999). The district court (and thus the bankruptcy court) is not required to abstain if the matter is a core proceeding. "Generally speaking, a

procedure is core ... if it involves a substantive right provided by title 11 or if it is a procedure that, by its nature, could arise only in the context of a bankruptcy case." *Adams v. Hartconn Assoc., Inc. (In re Adams)*, 212 B.R. 703, 715 (Bankr.D.Mass. 1997) citing *Noonan v. Cellu Tissue Corp. (In re Palmer Trucking Co., Inc.)*, 201 B.R. 9, 17 (Bankr.D.Mass.1996). "Because '[n]othing is more directly at the core of bankruptcy administration ... than the quantification of all liabilities of the debtor,' the bankruptcy court's determination whether to allow or disallow a claim is a core function." *S.G. Phillips Constructors, Inc.*, 45 F.3d at 705 citing *In re BKW Sys., Inc.*, 66 B.R. 546, 548 (Bankr.D.N.H. 1986). The determination of the Plaintiff's claim thus being a core proceeding, this Court is not required to abstain under § 1334(c)(2).

 Under § 1334(c)(1), this Court may abstain "in the interest of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1).[26] This provision authorizes what is commonly referred to as discretionary abstention. *See New Jersey Bank v. Donington, Karcher, Salmond, Ronan & Rainone, P.A. (In re Donington, Karcher, Salmond, Ronan & Rainone)*, 194 B.R. 750, 756 (D.N.J.1996). Discretionary abstention may be appropriate even where the proceeding is a core and jurisdiction is otherwise proper. Factors often examined include: (1) the effect of abstention on the efficient administration of the bankruptcy

set a hearing limited to considering the claim's proper calculation.

**24.** The Plaintiff failed to articulate whether he was requesting mandatory or discretionary abstention. Thus, both possibilities are considered.

**25.** 28 U.S.C. § 1334(c)(2) provides:

"(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United

States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

**26.** 28 U.S.C. § 1334(c)(1) provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the basis of bankruptcy jurisdiction (if any) other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to jury trial; (12) the presence in the proceeding of non-debtor parties. *Hatcher v. Lloyd's of London,* 204 B.R. 227, 234 (M.D.Ala.1997); *see also* Lawrence P. King, Collier on Bankruptcy ¶ 5011.02[1] (15th ed.1997).

▆▆▆▆▆▆ After consideration of the foregoing factors, this Court is persuaded that abstention would be inappropriate. None of the relevant factors which would weigh in favor of abstention appear to apply here. In particular, abstention will further delay and complicate the administration of this estate. To what end? In the final analysis, a substantial noncontingent claim faces the Debtor and, apparently, she can not pay that claim. Under these circumstances, relief under the Bankruptcy Code is her right. Further, no issues remain under state law. The Appeals Court has ruled, and the Probate Court has followed through. Even if one considers the ticklish problem of the timing of the final Probate Court order, the order of the Appeals Court was clear enough. The Probate Court action on the Motion to Restore was in the nature of enforcement only. There are therefore no issues which would impli-

cate this Court's otherwise natural inclination to return determinations to the Probate Court for the purposes of comity or to draw on that court's expertise.[27] The Appeals Court and the Probate Court have already spoken. The treatment of the Plaintiff's claim as determined by those courts is the province of this court.

Finally, there is no evidence here to support an allegation of inappropriate forum shopping. Protection under the Bankruptcy Code is the reason why debtors file their petitions for relief. It is not by itself a basis for criticism of their intentions. "Nothing in the Bankruptcy Code suggests that debtors may not file petitions while they have prepetition suits pending against them. Debtors frequently file for bankruptcy protection precisely because a growing number of creditors have brought suit." *S.G. Phillips Constructors, Inc.,* 45 F.3d at 705. In sum, none of the cited factors weighs here in favor of deference to state law processes, while efficient administration, as well as bankruptcy policy goals, weigh in favor of this Court determining the claim.

b. Constructive Trust

The Plaintiff suggests, in his Motion to Dismiss, that the Equity Claim might be subject to a constructive trust against the Debtor in favor of the Plaintiff, based on his allegations of her bad faith, fraud and misrepresentation. *See generally* Memorandum in Support of Plaintiff's Motion to Dismiss. Following the Plaintiff's argument, the imposition of a constructive trust would have the effect of recognizing that the equitable rights to the Equity Claim belong to the Plaintiff, and that the Debtor holds only bare legal title to the funds. The estate would therefore have no interest of any value in the assets, bare legal title being valueless to the estate, and the assets would be restored in full to the Plaintiff. *See* 11 U.S.C. § 541(d).

---

27. Of course, the result might be far different if the obligation implicated support, rather than property settlement, issues. *See, e.g.,*

*Sinewitz v. Sinewitz (In re Sinewitz),* 166 B.R. 786 (Bankr.D.Mass.1994).

At heart, a constructive trust is a legal fiction. It is an equitable remedy fashioned by the courts to right a perceived wrong, and bears little relation to an express or technical trust. *See XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1449 (6th Cir. 1994). "A constructive trust is 'a device employed in equity, in the absence of any intention of the parties to create a trust, in order to avoid the unjust enrichment of one party at the expense of the other where the legal title to the property ... was obtained by fraud or in violation of a fiduciary relation or arose where information confidentially given or acquired was used to the advantage of the recipient at the expense of the one who disclosed the information.'" *Superior Glass Co. v. First Bristol County Nat'l Bank*, 8 Mass.App. Ct. 356, 360–61, 394 N.E.2d 972, 975 (Mass.App.Ct.1979) *citing Barry v. Covich*, 332 Mass. 338, 342, 124 N.E.2d 921, 924 (Mass.1955); *see also Collins v. Guggenheim*, 417 Mass. 615, 618, 631 N.E.2d 1016, 1017 (Mass.1994); *Coelho v. Coelho*, 2 Mass.App.Ct. 433, 435, 313 N.E.2d 891, 892 (1974). Under Massachusetts law, in order to establish grounds for the imposition of a constructive trust, the plaintiff must also be able to trace the proceeds or profits of the corpus. *See Boston Safe Deposit and Trust Co. v. Seifert*, 1997 WL 64043, *4 (Mass.Super.1997).

There is no clear statutory basis for applying constructive trusts in bankruptcy. "Nowhere in the Bankruptcy Code does it say, 'property held by the debtor subject to a constructive trust is excluded from the debtor's estate.'" *Omegas Group, Inc.*, 16 F.3d 1443 at 1448 (1994). Section 541 defines property of the estate broadly to include all legal and equitable interests of the debtor in property as of the commencement of the case. 11 U.S.C. § 541(a)(1). Such a definition would seem to include property subject to the claims of creditors, including the *res* of a constructive trust. However, § 541(d)[28] does exclude any equitable rights in property to which the debtor holds only bare legal title, and those courts which have imposed or recognized a constructive trust in bankruptcy have frequently relied on § 541(d) as their statutory justification. *See Omegas Group, Inc.*, 16 F.3d at 1448.

The subject of constructive trusts in bankruptcy has received extensive judicial and academic attention; yet the propriety and handling of constructive trusts remains divided. *See generally* Thomas H. Jackson, *Statutory Liens and Constructive Trusts in Bankruptcy: Undoing the Confusion*, 61 Am.Bankr.L.J. 287 (1987); Carlos J. Cuevas, *Bankruptcy Code Section 544(A) [sic] and Constructive Trusts: The Trustee's Strong Arm Powers Should Prevail*, 21 Seton Hall L.Rev. 678 (1991). Constructive trusts pit competing goals of the Bankruptcy Code against one another, and for this reason, should be applied circumspectly. On the one hand, the Code endeavors to ensure that similarly situated creditors should be treated similarly. *See* Cuevas at 678; *CRS Steam, Inc. v. Engineering Resources, Inc. (In re CRS Steam)*, 225 B.R. 833, 839 (Bankr.D.Mass.1998). Further, property of the estate is construed broadly to expand the estate for the benefit of all creditors. *See* 11 U.S.C. § 541(a)(1); *In re LaFlamme*, 14 B.R. 21, 22 (1st Cir. BAP 1981). A constructive trust imposed on estate assets removes those assets from the general pool available to the creditor body, thereby favoring the trust beneficiary over other creditors. *See generally* Emily Sherwin, *Constructive Trusts in Bankruptcy*, 1989 U.Ill.L.Rev. 297. On the other hand, some argue that recognizing a constructive trust in bankruptcy prevents unjust enrichment to other creditors by excluding property to which those cred-

---

**28.** Section 541(d) provides:

"Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, ... becomes property of the estate under subsection (a)(1) ... only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."

itors would have had no claim outside bankruptcy. *See Vineyard v. McKenzie (In re Quality Holstein Leasing)*, 752 F.2d 1009, 1013 (5th Cir.1985) *cited in Omegas Group, Inc.*, 16 F.3d at 1449 ("Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own.").

Faced with competing policy considerations underlying the state law remedy of constructive trust and the equitable concerns regarding equivalent treatment of creditors in bankruptcy proceedings, together with the practical and policy-based problems associated with imposing or honoring constructive trusts, many courts have opted to strictly construe constructive trusts, where they have been allowed at all. *See Torres v. Eastlick (In re North Am. Coin & Currency, Ltd.)*, 767 F.2d 1573, 1575 (9th Cir.1985) (finding no fraud and observing that "we cannot accept the proposition that the bankruptcy estate is automatically deprived of any funds that state law might find subject to a constructive trust"); *Omegas Group, Inc.*, 16 F.3d at 1451 (refusing to impose constructive trust in the absence of a pre-petition state court decree that a constructive trust exists); *Fibre Form Corp. v. Slamin (In re Nova Tool & Eng'g, Inc.)*, 228 B.R. 678, 685 (Bankr.N.D.Ind.1998) *citing In the Matter of Iowa R.R. Co.*, 840 F.2d 535 (7th Cir.1988) (imposition of constructive trust will be based on debtor's misconduct, but also for prevention of unjust enrichment of debtor and with regard to impact on other creditors); *First Sec. Bank of Utah, N.A. v. Gillman*, 158 B.R. 498, 507 (D.Utah 1993) (refusing to impose constructive trust in absence of clear showing of unjust enrichment); *see also CRS Steam*, 225 B.R. at 839 n. 29; Sherwin at 340 (suggesting that the imposition of a constructive trust should depend on the presence of three factors: unjust enrichment of debtor at claimant's expense, traceability of the asset claimed, and involuntary extension of credit).

It is not necessary at this time to decide the broader question of whether a bankruptcy court should or must recognize a constructive trust where such would be appropriate under state law outside of the bankruptcy proceedings. Here, even assuming that the remedy were available, it would be inappropriate. First, the Plaintiff has not shown that the Debtor committed the "fraud or a violation f a fiduciary duty" Massachusetts law requires for the imposition of a constructive trust. *Nessralla v. Peck*, 403 Mass. 757, 762, 532 N.E.2d 685, 689 (Mass.1989). Further, no fiduciary relationship existed between the parties. *See Van Brode Group, Inc. v. Bowditch & Dewey*, 36 Mass.App.Ct. 509, 516, 633 N.E.2d 424, 428 (Mass.App.Ct.1994) ("A fiduciary duty is said to arise 'when one reposes faith, confidence, and trust in another's judgment and advice.' "); *Cleary v. Cleary*, 427 Mass. 286, 292–93, 692 N.E.2d 955, 959 (Mass. 1998) ("ordinarily, family relations do not suffice to create a fiduciary relationship"); *see also Barnhill v. Vaudreuil (In re Busconi)*, 177 B.R. 153, 158–59 (Bankr.D.Mass. 1995) (divorced spouse not insider for purposes of § 547). Finally, the Plaintiff has put forth no evidence showing that the funds which he claims to be subject to a constructive trust are traceable to the estate of the Debtor. *See Seifert*, 1997 WL 64043, *8. The Plaintiff can point to no res traceable to his claim. More simply put, constructive trusts are imposed on assets, not claims. For these various reasons, the Plaintiff's argument for the imposition of a constructive trust must fail.

### 3. *The Alimony Turnover Claim*

In her counterclaim to the Plaintiff's Complaint for Declaratory Judgment,[29] the Debtor demands the turnover of estate property under 11 U.S.C. § 542. As the basis therefor, the Debtor argues that the Appeals Court order which nullified the transfer of the Pensions also invalidated the Modification Judgment. In

---

29. Count II of the Counterclaim.

support of his Motion for Summary Judgment and relevant to the Debtor's Counterclaim II, the Plaintiff has submitted the Motion to Vacate (Exhibit 2 to the Motion for Summary Judgment), dated January 4, 1995, which was allowed by endorsement order;[30] the Amended Judgment on Further Division of the Marital Assets (Exhibit 3 to the Motion for Summary Judgment), dated February 8, 1996 ("as of December 26, 1995"); the Appeals Court order vacating the order allowing the Motion to Vacate, dated March 20, 1998 (Exhibit 6 to the Motion for Summary Judgment); and the Complaint for Modification (dated March 22, 1995), Judgment of Modification (dated December 26, 1995) and Amended Modification Judgment, dated February 2, 1996 ("as of December 26, 1995") (Exhibits 9, 10 and 11 to the Motion for Summary Judgment). The Debtor did not submit any evidence in support of her Counterclaim.

The Debtor's argument that the Appeals Court order vacated the Judgment of Modification is not supported by the pleadings submitted by either party. Nothing in the Appeals Court order vacating the order allowing the Motion to Vacate appears to address the Modification Judgment. Both the order and the memorandum address only the property distribution, and have no bearing on the Modification Judgment.[31] The Appeals Court's memorandum in support of the order makes clear that it refers only to "the allowance of the plaintiff's verified motion to vacate the 'Judgment and Agreement' in the divorce action." (Appeals Court Memorandum and Order p. 1, ¶ 2, attached as Exhibit 6 to p. 6 of Memorandum in Support of Motion for Summary Judgment).

It is further noted that the Debtor's then-attorney, Edward Mahlowitz, executed an affidavit on June 8, 1998 (attached as Exhibit B to the Debtor's Answer to the Motion to Dismiss), in which he states (under the pains and penalties of perjury) that the Appeals Court's reversal of the Probate Court's division of the marital assets leaves the Husband the full value of the real estate parcel, the return of pensions, the income from the Post Office real estate, the income from New Hampshire real estate, *and a reduced alimony obligation to the Wife* (from $500.00 to $250.00 per week). (Exhibit B to Debtor's Answer to the Motion to Dismiss, ¶ 29 (emphasis added)). The Debtor's position now appears inconsistent with one taken by her counsel under oath. However, more importantly, the Debtor did not appeal the Judgment of Modification, and the time period for so doing has long expired. The proper avenue for challenging that ruling would have been to appeal during the time provided. The Debtor's argument now that the ruling should be overturned constitutes an impermissible collateral attack on a valid judgment.

## IV. *Conclusion*

For the foregoing reasons, the Court denies the motion of Richard Cox to dismiss; rules in favor of the plaintiff Richard Cox on his Motion for Summary Judgment; rules in favor of plaintiff Richard Cox on the Debtor Nancy L. Cox's Counterclaim I and Counterclaim II; and on Counterclaim III, rules that plaintiff Richard Cox shall have a general unsecured claim, in an amount to be set by the Court after further hearing. The plaintiff Richard Cox's request for abstention as to Counterclaim III is denied.

---

**30.** The endorsement order makes reference to a Memorandum of Decision. This Court is unable to locate such a document among the many filings related to this matter.

**31.** The actual phrasing of the order is as follows: "The order allowing the plaintiff's motion to vacate the divorce judgment is vacated, and the original judgment of divorce is reinstated. The case is remanded to the Probate Court for the purpose of acting upon any application of the Debtor to restore the parties to the status quo ante, consistent with this opinion."