This case involves a dispute over real estate commissions relating to the sale of two properties. The plaintiff, Turnpike Commercial Real Estate, Inc. (Turnpike) was the buyer's agent. The defendant, B.C. Executive Realty, Inc., doing business as RE/MAX Executive Realty, Inc. (RE/MAX), was the seller's agent. Turnpike filed a complaint in the Superior Court seeking a declaratory judgment that it was entitled to certain commissions. The parties filed cross motions for summary judgment. After hearing, Turnpike's motion was denied and RE/MAX's motion was allowed. Turnpike appeals, claiming error in the judge's application of the doctrine of judicial estoppel and in certain other aspects of the judge's analysis. We affirm.
Background. In 2011, RE/MAX obtained listings for two properties in Medfield, owned by Paulo and Karen deMatos (sellers). Both properties were encumbered by mortgages which exceeded their value. At the time of the sale, the loans were assigned to Nationstar Mortgage (Nationstar). Larkin Holdings, LLC (Larkin Holdings or buyer) purchased the properties. Because the sale price was less than the amount of the outstanding mortgages, the sellers were required to obtain Nationstar's approval for the short sales. As a condition to approving the short sales, Nationstar required all parties to execute short sale affidavits. The short sale affidavits were signed by the sellers; Michael Larkin on behalf of Larkin Holdings; the sellers' agent; and Patrick Larkin of Turnpike as the buyer's agent. The affidavits provided, in pertinent part, that "neither the Seller(s) nor the Buyer(s) will receive any funds or commission from the sale of the Property" and that "[t]here are no agreements, understandings or contracts relating to the current sale or subsequent sale of the Property that have not been disclosed to the Servicer." The closing attorney sent an electronic mail message (e-mail) to the parties informing them that Patrick Larkin had a twenty-five percent membership interest in Larkin Holdings. The parties agreed that in order to move forward with the closing, Turnpike would not receive a commission from the sale. The parties signed the short sale affidavits, the HUD-1 settlement statements were executed, and the transactions closed.
Discussion. On appeal, "[w]e review a grant of summary judgment de novo." Miller v. Cotter, 448 Mass. 671, 676 (2007). We look to the summary judgment record to determine "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law." Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). See Mass.R.Civ.P. 56(c), as amended, 436 Mass. 1404 (2002).
RE/MAX was entitled to summary judgment and entry of a declaratory judgment awarding it the full commission. It was undisputed that the transactions were short sales which required Nationstar's approval. As a condition precedent, Nationstar required the parties to execute short sale affidavits with certain conditions. Turnpike did not object when, in order to comply with those conditions, it was agreed that it would not receive a commission. The undisputed facts do not support Turnpike's argument that summary judgment should have entered in its favor. Indeed, if RE/MAX had paid a commission to Turnpike after the closing, it would have constituted an end run around Nationstar's short sale requirements.
Turnpike makes several claims of error. First, the fact that Turnpike had previously disclosed Patrick Larkin's interest in Larkin Holdings is of no import. The timeliness of the disclosure was not the issue; rather, it was Nationstar's requirement that the buyer could not receive a commission. Similarly, Turnpike's claim that the judge improperly pierced the corporate veil is misplaced. The judge properly determined that Turnpike's execution of the short sale affidavits, its failure to object to the condition that it would not receive a commission, and the subsequent closings were the operative actions. Accordingly, there was no error.
Turnpike next contends that the judge erred in failing to apply the doctrine of judicial estoppel. Turnpike relies on an e-mail that was sent by RE/MAX's attorney to the seller's attorney, prior to this litigation. It stated that "[i]f Turnpike has not violated Massachusetts law by timely disclosure in writing of its interest in the buyer, RE/MAX will proceed to release Turnpike's commission." Because it had disclosed Patrick Larkin's interest in Larkin Holdings nearly eleven months prior to the closing, Turnpike argues that RE/MAX is judicially estopped from contesting Turnpike's entitlement to a commission. "Judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding." Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 639-640 (2005). In some instances, judicial estoppel is appropriate where litigants have asserted inconsistent positions in successive stages of the same litigation. Fay v. Federal Natl. Mort. Assn., 419 Mass. 782, 788 n.10 (1995). Because no such legal proceeding existed when the e-mail was sent and the statement was not made before the court, it cannot serve as the basis of judicial estoppel. See Paixao v. Paixao, 429 Mass. 307, 309 (1999). There was no error.[4]
Judgment affirmed.

Other arguments raised by Turnpike, but not discussed in this memorandum and order, have not been overlooked. We find nothing in them that requires discussion. Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).