## J. JOSEPH MENG *vs.* TRUSTEES OF BOSTON UNIVERSITY.

No. 96-P-0776.

Suffolk. February 5, 1997. - April 30, 1998.

Present: ARMSTRONG, GILLERMAN, & LENK, JJ.

*Contract,* Severance agreement, Consideration. *Frauds, Statute of.*

The Statute of Frauds rendered unenforceable an oral contract for the payment of severance benefits over a fourteen-month period. [651-653]

CIVIL ACTION commenced in the Superior Court Department on October 3, 1991.

The case was tried before *Richard E. Welch III,* J.

*Michael S. Gardener* for the defendants.

*Gary R. Greenberg (Susan B. Hanmer* with him) for the plaintiff.

ARMSTRONG, J. The plaintiff, Meng, was a vice-president at Boston University (university) who resigned his position in July, 1991, to protest what he regarded as the unethical and unprofessional behavior of the university's president, John Silber, in terminating a recently renewed contract with Linkage Corporation (Linkage). See *Linkage Corp.* v. *Trustees of Boston University,* 425 Mass. 1, 11 n.18, cert. denied, 118 S. Ct. 599 (1997). Meng succeeded in this action in recovering a judgment against the university of $195,000 as damages for the university's failure to implement a package of termination benefits to which the plaintiff claimed, and the jury found, he was entitled. The university appealed.

1. *Lack of consideration.* The basis on which the plaintiff claimed his entitlement to the severance package — fourteen months of salary and benefits and free tuition for two of his children, if either should later attend the university — was an oral promise to that effect allegedly made by Silber to the plaintiff on July 3, 1991, just after Silber terminated the Link-

age contract.[1] The university argues that there was no consideration for the promise. Although the question is close, there was some evidence, in Meng's testimony, that in reaching the alleged agreement on July 3, Silber asked Meng to prepare a description of his duties with an eye to effecting a smooth transfer of Meng's responsibilities to others. Meng prepared the requested document and agreed to remain for a short period to offer any assistance requested during the transfer of duties. While there was strong evidence that transitional services were not bargained for as a part of the severance agreement, see *United Beef Co.* v. *Childs*, 306 Mass. 187, 190 (1940) ("[c]onsideration consists only of that which the contracting parties offer and accept as such"), the judge did not err in ruling that, on the evidence, the question was one for the jury.[2]

2. *Statute of Frauds.* The university argues that the agreement, even if made, is unenforceable under the fifth clause of the Statute of Frauds (G. L. c. 259, § 1) as a contract not to be fully performed within one year. That clause has been construed not to apply to a contract that may be fully performed within a one-year period from the making of the contract although

[1]At the trial President Silber acknowledged that he agreed to a fourteen-month salary and benefit continuation, but only as one term of a broader severance agreement, the other terms of which were to be worked out by the university's budget and legal offices and approved by the trustees' executive compensation committee. Meng declined to sign the broader agreement, objecting to terms requiring his cooperation in the anticipated action for damages by Linkage.

[2]The judge did err, however, in instructing the jury that they could find consideration for the severance contract in Silber's efforts to preserve good relations with the Meng family in the hope of retaining the good will and the continued services of Christine Meng, the plaintiff's wife, who, like her husband, was a vice-president of the university. Silber testified that this was one of the reasons that he agreed to what he regarded as generous severance terms, but in neither Silber's nor Meng's accounts of their July 3 conversation (or, indeed, in any other conversation between them) was mention made of the continued services of Christine Meng. On no view of the evidence could it be found that her services were either promised or made a condition of the agreement. "The mere presence of some incident to a contract which might under some circumstances be upheld as consideration for a promise, does not necessarily make it the consideration for the promise in that contract. To give it that effect it must have been offered by one party and accepted by the other as one element of the contract." *Fire Ins. Assn., Ltd.* v. *Wickham*, 141 U.S. 564, 579 (1891), cited with approval in *United Beef Co.* v. *Childs*, *supra* at 190-191. The judge's instruction was vigorously objected to by the university and would necessitate reversal and retrial if it were not made immaterial by our decision respecting the Statute of Frauds.

performance, in fact, may extend beyond one year. *Peters* v. *Westborough*, 19 Pick. 364, 367 (1837). *Bolton* v. *Van Heusen*, 249 Mass. 503, 506 (1924). *Joseph Martin, Inc.* v. *McNulty*, 300 Mass. 573, 577 (1938). *Boothby* v. *Texon, Inc.*, 414 Mass. 468, 479 (1993). *Novel Iron Works, Inc.* v. *Wexler Constr. Co.*, 26 Mass. App. Ct. 401, 410-411 (1988).

To illustrate, an oral contract of permanent employment or employment for an indefinite period is enforceable under the statute because the employee may die in a period of less than one year or the employer may go out of business. See, e.g., *Dunne* v. *Fall River*, 328 Mass. 332, 334 (1952); *Boothby* v. *Texon, Inc.*, 414 Mass. at 479; *Johnson Clinic, Inc.* v. *Huffnagle*, 2 Mass. App. Ct. 837 (1974). See also *Sereni* v. *Star Sportswear Mfg. Co.*, 24 Mass. App. Ct. 428, 433-434 (1987). In contrast, a contract of employment for a definite period in excess of one year, or for one year to start more than one day after the making of the contract, is not enforceable under the statute, because it is not capable of being fully performed within one year from the making of the contract. See, e.g., *Williams* v. *Pittsfield Lime & Stone Co.*, 258 Mass. 65, 69 (1927); *Beaver* v. *Raytheon Mfg. Co.*, 299 Mass. 218, 220 (1938); *Bogash* v. *Studios, Inc.*, 303 Mass. 207, 208 (1939); *Irving* v. *Goodimate Co.*, 320 Mass. 454, 458 (1946). It is true, of course, that the employee might die within one year, or the employer go out of business. Either event would discharge the contract, but the contract would not have been fully performed. *Powers* v. *Boston Cooper Corp.*, 926 F.2d 109, 110 (1st Cir. 1991) (applying Massachusetts law). To illustrate further: an oral contract for a brokerage commission to sell land after it was prepared for development is enforceable under the Statute of Frauds, despite the fact that the parties may contemplate that sales will not be completed for more than one year. *Joseph Martin, Inc.* v. *McNulty*, 300 Mass. at 577, quoting from *Peters* v. *Westborough*, 19 Pick. at 367 (understanding that the agreement is not to be performed within a year "[must] be absolute and certain, and not to depend on any contingency"). See *Novel Iron Works, Inc.* v. *Wexler Constr. Co.*, 26 Mass. App. Ct. at 410-411 (oral construction contract entered into on September 2, 1981, that must be substantially completed by October 30, 1982, enforceable under statute because nothing in agreement precluded the contractor from completing by September 2, 1982).

The contract alleged by Meng was one that could not be fully

performed in one year, not because of the provision for free tuition for his children, but because the contract described in Meng's testimony called for payments of salary and benefits (group insurance, contributions to his employer-subsidized Keough plan, etc.) over a fourteen-month period, during which period he would be on terminal leave of absence.[3] For purposes of decision, we can assume (the parties have not addressed the point) that Meng's death in less than one year would terminate the university's obligation to make further payments, but in that event the agreement would not have been fully performed. Contrast *Fox* v. *F & J Gattozzi Corp.*, 41 Mass. App. Ct. 581, 591 (1996) (oral agreement for payment of retirement benefits until death of employee enforceable under the statute because the employee could die in less than one year).

Meng argues that the agreement should be taken out of the operation of the Statute of Frauds because he performed his part of the agreement, that is to say, he furnished Silber with the list of his responsibilities (one and one-half pages) and made himself available for transition services until July 26, 1991. It was settled, however, in *Marcy* v. *Marcy*, 9 Allen 8, 12 (1864), that performance, even if full, does not remove a contract from the operation of G. L. c. 259, § 1, Fifth. That holding has been repeatedly reaffirmed, see *Kelley* v. *Thompson*, 175 Mass. 427, 430 (1900); *DeMontague* v. *Bacharach*, 187 Mass. 128, 134 (1905), and the principle has been applied in such cases as *Williams* v. *Pittsfield Lime & Stone Co.*, 258 Mass. at 69; *Allen* v. *Williams Motor Sales Co.*, 277 Mass. 295, 297-299 (1931); *Growers Outlet, Inc.* v. *Stone*, 333 Mass. 437, 443 (1956); and *Richard Tucker Assocs., Inc.* v. *Smith*, 395 Mass. 648, 650 (1985). In all of these cases the plaintiff had performed his part of the agreement, either fully or in part, but was held not to be entitled to recovery under the contract.[4]

---

[3]The judge suggested that the university's performance could be completed within one year if it paid Meng fourteen months of salary and benefits in a lump sum. The university properly objected that such a performance would encounter difficulties — ERISA restrictions on excessive contributions to retirement plans of highly paid employees, different tax consequences, and group insurance incompatibilities. This only illustrates that any agreement could be brought within the Statute of Frauds if the judge could rewrite the agreement.

[4]As explained in several of those decisions, a plaintiff who is unable to recover under the contract because of the one-year provision of the statute may recover on a theory of quantum meruit or quantum valebat for services

The judgment is reversed, and a new judgment is to be entered for the university.[5]

*So ordered.*

---

rendered or goods delivered to the extent that the services or goods were of value to the defendant. See *Marcy* v. *Marcy*, 9 Allen at 14-15; *Kelley* v. *Thompson*, 181 Mass. 122, 124 (1902); *DeMontague* v. *Bacharach*, 187 Mass. at 134; *Williams* v. *Pittsfield Lime & Stone Co.*, 258 Mass. at 70. As in the case last cited, those theories of recovery are apt to be of dubious practical value to a plaintiff who, like Meng, seeks recovery of promised benefits seemingly disproportionate to the value of the services he rendered in return. (Here, the case was put to the jury on two theories, breach of an oral agreement and promissory estoppel, which, as put to the jury, would have given Meng a restitutionary recovery. The jury found for Meng on the former but for the university on the latter.)

We note that Massachusetts is one of a minority of jurisdictions holding that full performance by one party does not remove the entire agreement from the operation of the statute. See discussion in 2 Corbin, Contracts §§ 457-458 (1950). The majority follow the rule set out in the Restatement of Contracts § 198 (1932), and Restatement (Second) of Contracts § 130(2) (1981). By permitting recovery off the contract (i.e., in restitution), and allowing the value of the promised performance to be admitted as evidence of value to the party pleading the statute, the minority States largely avoid the use of the statute as an instrument of injustice. See 2 Corbin, Contracts § 458, at 580 n.87, citing *Marcy* v. *Marcy*, 9 Allen at 14-15; *Pierce* v. *Estate of Paine*, 28 Vt. 34, 40-41 (1855).

[5]What has been said obviates the need to deal separately with Meng's cross appeal, which concerned a ruling by the judge precluding Meng from recovering damages for one of the employment benefits — key-man life insurance — that the severance package would have contained.