Houston, J.
The plaintiff Scott M. DiGaetano (“DiGaetano”), filed this action in Middlesex Superior Court against the defendant, Lawrence Firefighters Federal Credit Union (“Credit Union”). The plaintiff alleges wrongful termination (Count I), breach of contract and promissory estoppel (Count II), fraudulent misrepresentation (Count III), and fraud (Count IV). The Credit Union has moved for summary judgment on all counts in the plaintiffs complaint. For the reasons set forth below, the motion is DENIED as to Count I and is ALLOWED as to Counts II, III and IV.
BACKGROUND
The following are the facts taken in the light most favorable to the plaintiff.
In the fall of 1999, Scott McLaughlin (“McLaughlin”), Chief Executive Officer (“CEO”) of the Credit Union, entered into numerous discussions with the plaintiff about coming to work for the Credit Union.[1] McLaughlin discussed with the plaintiff the possibility of starting a new mortgage loan department at the Credit Union. During the course of these discussions, McLaughlin told DiGaetano to name his compensation. In addition to salary and commissions, they also discussed the possibility of profit sharing and other benefits. In November of 1999, DiGaetano was asked to prepare a five-year profitability analysis for the new mortgage department and a compensation package to present to the board of the Credit Union.
DiGaetano claims McLaughlin, acting with authority from the board, agreed to a base salary of $50,000 plus up to $2,100 monthly commissions based on the plaintiffs loan volume. He does not recall, however, the specifics of his conversations with McLaughlin regarding the nature of his employment with the Credit Union, whether the employment was at-will, for a term of five years, or indefinite. The plaintiff believed that he had either an indefinite contract or a five-year contract with the Credit Union because McLaughlin had asked the plaintiff to prepare a five-year plan and the company issued a newsletter which stated that the plaintiff would take the new mortgage department into the new millennium. The plaintiff also does not recall any specific conversations about other compensation he would receive and the conditions under which he could be discharged. Although he did not have a written contract with the Credit Union, the plaintiff did sign its personnel policy. Section 4(d) of the policy states:
The Credit Union adheres to the doctrine of employment at will. Only the Board of Directors may change this policy. When such a change is implemented, a written contract for a definite period of time will be entered into and will be signed by both the employee and the President of the Board.
Furthermore, the plaintiff signed the Employee Acknowledgment attached to the end of the handbook which, in relevant part, states:
I have entered into my employment relationship with this Credit Union voluntarily and acknowledge that there is no specified length of employment. Accordingly, either I or the Credit Union can terminate the relationship at will, with or without cause, at any time. The ‘at-will’ nature of the employment relationship can only be altered by a written contact signed by the Credit Union President with Board approval, specifically changing the ‘at-will’ employment of a particular employee.
*395 DiGaetano began his employment as the manager of the mortgage department at the Credit Union in February 2000. For the first three months the Credit Union paid the plaintiff his salary and commissions. In the Spring of 2000, the Credit Union began to run out of loanable funds. In May 2000, DiGaetano began a review of the older mortgage loans to determine whether any of them could be resold on the open markets. During this analysis the plaintiff discovered two suspect loans made to McLaughlin in September 1999. He believed these loans were illegal because they did not have the mandatory paperwork and credit committee approval. DiGaetano also believed that other loans violated lending laws because they showed evidence of preferential treatment. The plaintiff prepared a memorandum describing the loans, which he planned to present to the board. He also informed Assistant Manager Paula Veres (“Veres”) about the suspect loans in June of 2000. The plaintiff however, did not report these loans to the National Credit Union Administration (“NCUA”) or the Credit Union’s outside auditors because he wanted to conduct a further investigation before accusing McLaughlin of such a serious charge. On June 29, 2000, Veres sent a memo to McLaughlin asking him to provide the completed applications for the September 1999 loans with the proper credit committee approval signatures. Additionally, in June 2000, DiGaetano acquiesced to the board’s request that he take a $100 reduction in his commission payments. The board was not aware that DiGaetano had been receiving commissions.
On July 18, 2000, the board terminated the plaintiffs employment at the Credit Union. McLaughlin stated that the plaintiff did not fit in to the Credit Union’s corporate culture. Specifically, McLaughlin claimed that the plaintiff often kept the doors to his office closed, that he often ate lunch alone in his office with Veres and his assistant, Frances Geary (“Geary”), that the plaintiff arrived at a casual corporate function in his business attire and then retreated to his office to work, and that he did not respond to McLaughlin’s two requests to change his office demeanor. Shortly after the Credit Union discharged the plaintiff, the mortgage department ran out of loanable funds. The Credit Union does not cite this as a basis for DiGaetano’s dismissal. After the plaintiffs firing, Veres continued her investigation into the issues raised by the plaintiff and submitted a report to the board. On September 15, 2000, McLaughlin resigned after the board gave him the option to be terminated or to resign.
DISCUSSION
Summary judgment is appropriate when there are no genuine issues of material fact and the summary judgment record entitles the moving party to judgment as a matter of law. Sec Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The facts must be viewed “in the light most favorable to [the nonmoving party], taking all the facts set forth in its supporting affidavits as true.” G.S. Enterprises, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 263 (1991). The moving party bears the burden of demonstrating that there is no genuine issue of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). A moving party who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Vague or general allegations of expected proof or mere assertions or inferences made by the opposing party are insufficient to defeat a motion for summary judgment. See First National Bank of Boston v. Slade, 379 Mass. 243, 246 (1979).
A. Standing Order 1-88
The plaintiff claims that the court should bar the defendant’s motion for summary judgment because it violated Superior Court Standing Order 1-88E(i)(4). Standing Order 1-88E(i)(4) states that summary judgment motions must be “served and heard" within 330 days after designation of the case to Fast Track. See Massachusetts Rules of Court Sup.Ct.R.Civ.P. Standing Order 1-88E(i)(4). On February 5, 2002, Justice Kern granted the defendant a sixty-day extension to file its motion for summary judgment. The defendant did not file this motion for summary judgment until the last day of the deadline, April 23, 2002. The plaintiff therefore, argues that since the defendant’s motion was not “served and heard” by April 23, 2002, this court should not consider the defendant’s motion.
Standing Order 1-88 “was adopted in an effort to ‘secure the just speedy, and inexpensive determination of every action.’ ” Stone v. Reilly, 2002 WL 506842, at *1 (Mass.App.Ct. March 27, 2002) (unpublished decision); Ferver v. Butnus, 1996 WL 1352866, at *3 (Mass.Super. Aug. 13, 1996) (Quinlan, J.); see Massachusetts Rules of Court Sup.Ct.R.Civ.P. Standing Order 1-88E(i)(4). The purpose of the rule would not be served by denying the motion. Refusing to address this motion would be wasteful as there are certain issues that should be addressed by the court prior to trial. Furthermore, failure to comply with Standing Order 1-88 does not bar the court from ruling on the motion. “A rule providing that late filed motions may be disregarded by the court is not the equivalent of a rule that would require such a result.” Bonnie W. v. Commonwealth, 419 Mass. 122, 123 n.1 (1994) (referring to Standing Order 1-88). Since, the purpose of the rule would not be furthered by barring the defendant’s motion and the court has jurisdiction to address the motion, the court will consider the defendant’s motion for summary judgment.[2]
*396 B. Breach of Contract
The plaintiff makes three breach of contract claims. First, the plaintiff claims that he had either an indefinite contract with the Credit Union or an oral five-year contract that the defendant breached when it fired the plaintiff. Second, DiGaetano claims that the defendant breached the implied covenant of good faith and fair dealing by firing the plaintiff in order to avoid having to pay him commissions that he had earned. Third, the plaintiff claims that the defendant breached the plaintiffs contract when it violated portions of the defendant’s personnel policy.
1.Statute of Frauds
The defendant claims that the court should grant its motion for summary judgment on the plaintiffs breach of contract claim because the plaintiff did not have an enforceable contract with the defendant. The defendant argues that the plaintiff did not have an indefinite contract and that an oral contract for a term of five years violates the Statute of Frauds. An oral contract that is not to be performed within a year is unenforceable under the Statute of Frauds. See G.L.c. 259, §1 (2002); Meng v. Trustees of Boston University, 44 Mass.App.Ct. 650, 651 (1998). An oral contract for an indefinite duration, however, is enforceable under the Statute of Frauds “because the employee may die in a period of less than a year or the employer may go out of business.” Id. at 652. This court finds that the plaintiff did not have an indefinite contract and that his alleged oral contract for a term of five years violates the Statute of Frauds.
The plaintiff has produced no set of facts from which a reasonable juror could infer that he had an indefinite contract. First, the plaintiff does not know whether he had an indefinite contract or a five-year contract. If the plaintiff is not sure, then the plaintiff cannot claim that he had an indefinite contract, strictly for the purpose of avoiding the Statute of Frauds. Second, in order to claim that an employee has an indefinite contract, at a minimum the plaintiff must present evidence of a promise of permanent employment. The plaintiff has produced no facts from which a reasonable juror could infer that there was such a promise. The only evidence produced by the plaintiff was an announcement in the Credit Union’s newsletter welcoming the plaintiff to the company and looking forward to his relationship with the Credit Union as it “moves into the new millennium.” Even if this constitutes admissible evidence, it does not provide a reasonable basis from which a person could infer that the plaintiff had an indefinite contract. The announcement was sent after the defendant hired the plaintiff. Additionally, the plaintiff cannot remember any statements made by McLaughlin about permanent employment. Cf. Boothby v. Texon, Inc., 414 Mass. 468, 476 (1993) (agreement to employ permanently); Sereni v. Star Sportswear Manufacturing Corp., 24 Mass.App.Ct. 428, 434 (1987) (“you have a job as long as you want”). Moreover, the plaintiff provides no explanation for why he signed the acknowledgment page of the personnel policy which specifically stated his employment was at-will. Based on the facts presented to the court, the plaintiff has provided insufficient evidence to infer that he had an indefinite contract with the plaintiff.
Lastly, assuming the plaintiff had a five-year orad contract with the defendant, that contract is unenforceable under the Statute of Frauds. Such a contract could not be performed in a year because it required salary, commissions, and benefits over a five-year period. See Meng, 44 Mass.App.Ct. at 652-53. Since the plaintiff does not have an indefinite contract or an enforceable five-year contract with the defendant, the plaintiff cannot sustain his breach of contract claim.
2.Implied Covenant of Good Faith and Fair Dealing
The plaintiff also claims that the defendant breached an implied covenant of good faith and fair dealing by firing the plaintiff in an attempt to avoid having to pay him the commissions he was due. Where the defendant incurs an obligation to pay commissions for work performed, the decision to terminate must be made in good faith. See Fortune v. National Cash Register Co., 373 Mass. 96, 102 (1977). The plaintiff has produced no facts in support of his argument that the defendant fired the plaintiff in an attempt to avoid having to pay commissions he earned. Mere assertions or inferences made by the opposing party are insufficient to defeat a motion for summary judgment. See First National Bank of Boston, 379 Mass. at 246.[3]
3.Breach of the Personnel Policy
The promises made in a personnel policy may be binding on an employer. See O’Brien v. New England Telephone & Telegraph Co., 422 Mass. 686, 691 (1996). Assuming, without deciding, that the personnel policy is enforceable, the plaintiff claims that the defendant breached the terms of the personnel policy by (1) McLaughlin’s false communications to the board about the terms of the plaintiffs employment, (2) firing the plaintiff without consulting the board, and (3) failing to be aware of McLaughlin’s improper motive for firing the plaintiff. The plaintiff has failed to show a breach on all three grounds.
With respect to his first and third claims, the plaintiff has failed to point to a specific policy in the personnel policy that the defendant breached. Without demonstrating what duty the policy imposed on the defendant, the plaintiff cannot sustain his burden of proving an essential element of his breach of contract claim. In his second ground for a breach of the personnel policy, the plaintiff claims that the defendant violated Section 4b of the personnel policy by firing the plaintiff without consulting the board. Section 4b states “(t]he Board of Directors is responsible for hiring and terminating management personnel.” The plaintiff has produced no evidence from which a reasonable *397 juror could infer that McLaughlin fired the plaintiff without the board’s approval. The summary judgment record contains the depositions of three members of the Credit Union’s board at the time the Credit Union fired the plaintiff. None of the board members, who gave deposition testimony, implied that they did not sign off on the plaintiffs dismissal. Beyond the plaintiffs mere assertions, the plaintiff has not produced enough evidence to establish a claim that the defendant breached Section 4b of the personnel policy.
For all of the above reasons, the court grants the defendant’s motion for summary judgment on the plaintiffs breach of contract claim.
C. Promissory Estoppel
To avoid the entry of summary judgment on the issue of promissory estoppel, an at-will employee has to show that he “reasonably relied on an unambiguous promise.” Upton v. JWP Businessland, 425 Mass. 756, 760 (1997). A promise is a “manifestation of an intention to act or refrain from acting in a specified way, so as to justify a promisee in understanding that a commitment has been made.” Rhode Island Hospital Trust National Bank v. Varadian, 419 Mass. 841, 849-50 (1995). The plaintiff does not point to any statement by McLaughlin or a member of the board that could be characterized as a promise. The plaintiff admits that he cannot recall specific conversations or statements made to him by McLaughlin or the board about the term of his employment or on what grounds he could be fired. At most the plaintiff can point to the board’s request, prior to the time he began his employment, that he prepare a five-year profitability analysis for the new mortgage department and alleged statements by McLaughlin that the new mortgage department would not be profitable for five years. It cannot be inferred from those actions and statements that the defendant unambiguously promised to employ the plaintiff for a five-year period.
Even if such actions could be characterized as a promise, they cannot be characterized as unambiguous. The plaintiff does not attempt to explain why he signed the acknowledgment page of the personnel policy which specifically stated that his employment was at-will. Furthermore, the plaintiff claims that he may have had an indefinite contract or a five-year contract. Given that the plaintiff does not know what type of contract he had with the defendant, he cannot claim that the defendant made an unambiguous promise to hire him for a five-year term. This court, therefore, grants the defendant’s motion for summary judgment on the plaintiffs promissory estoppel claim.
D. Wrongful Termination
The plaintiff claims that the defendant terminated him because he threatened to “blow the whistle” on McLaughlin’s suspicious loan activities. Generally, an at-will employee may be terminated at any time for any reason or for no reason at all. See Upton, 425 Mass. at 757. “Liability may be imposed on an employer, however, if an at-will employee is terminated for a reason that violates a clearly established public policy.” Id. Whether the plaintiffs termination falls within the public policy exception is a question of law for the judge to decide, not the jury. See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 151 (1989). In Mello v. Stop & Shop Companies, Inc., 402 Mass. 555 (1988), the court assumed without deciding that whistleblowing may provide a valid basis for a public policy exception, even if the whistleblower does not complain to outside authorities. Mello, 402 Mass. at 560 n.6. In determining whether to grant summary judgment, the court must first determine whether, assuming the defendant fired the plaintiff because he intended to blow the whistle on McLaughlin’s suspicious loan activity, such conduct would fall within the public policy exception. Second, if the defendant’s conduct falls within the exception, then the court must determine whether the defendant has shown that there is no genuine issue of material fact and is entitled to summary judgment as a matter of law.
1. The Defendant’s Conduct Falls Within the Public Policy Exception
“A basis for a common law rule of liability can easily be found when the Legislature has expressed a policy position concerning the rights of employees and an employer discharges an at-will employee in violation of that established policy, unless no common-law rule is needed because the Legislature has also prescribed a statutory remedy.” Id. at 557. In this case, the court does not need to look to the common law because the court has the benefit of a statute that clearly expresses a policy preference for protecting the rights of whistleblowers within federal credit unions. The Federal Credit Union Act, 12 U.S.C. §1790b(a)(l), states in relevant part:
No insured credit union may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to the [National Credit Union] Board or the Attorney General regarding any possible violation of any law or regulation by the credit union or any director, officer, or employee of the credit union.
In Simas v. First Citizens’ Federal Credit Union, 63 F.Sup.2d 110 (D.Mass. 1999), the federal district court held that there is a basis in Massachusetts state law for affording whistleblowers, within federal credit unions, the same protections set forth in 12 U.S.C. §1790b(a)(1). Simas, 63 F.Sup.2d at 115.[4] The court based this holding on four factors. First, in Mello, the SJC assumed that a person who blew the whistle could be protected. See id. Second, the SJC has suggested that whistleblowing would fall under the “penumbra *398 of ‘performing important public deeds, even though the law does not absolutely require the performance of such a deed ’ ” Id., citing Flesner, 410 Mass. at 810-11 n.3. Third, while the federal statute requires the employee to complain to the NCUA, Massachusetts does not require an employee to complain about criminal activity externally in order to get protection. See id., citing Shea v. Emmanuel College, 425 Mass. 761, 763 (1997) (finding that there was no difference between a employee who complained internally about criminal activity versus one who complained externally). Fourth, Simas’ whistleblowing rose to “such a level of import as to implicate the exception.” Id., quoting Smith v. Mitre Corp., 949 F.Sup. 943, 951 (D.Mass. 1997).
In particular circumstances, the public policy exception protects whistleblowers who reasonably and in good faith believe that an employer is violating the law, even if that belief is erroneous. See Shea, 425 Mass. at 763 (finding that a plaintiffs threat to blow the whistle on a violation of criminal law falls within the public policy exception); Cf. Mello, 402 Mass. at 560 (finding that the plaintiffs threat to blow the whistle on his superiors who made false damage and shortage claims to store managers did not fall within the public policy exception because those claims concerned internal matters); Mistishen v. Falcone Piano Company, Inc., 36 Mass.App.Ct. 243, 246 (1994) (finding that the employee’s termination for her complaints that her superior breached warranties in violation of G.L.c. 93A, by selling “bargain basement pianos” as pianos of superior quality, did not fall within the public policy exception). This court agrees with the reasoning in Simas that the plaintiffs whistleblowing rises to such a level as to implicate the public policy exception.
This case is distinguishable from Mello and Mistishen for two reasons. First, neither Mello nor Mistishen involved cases where there was a specific statute that expressed a policy preference for protecting whistleblowers. In fact, in Mistishen the court found it “significant” that the Legislature could have imposed an obligation on employees to report unfair and deceptive business practices but did not. Mistishen, 36 Mass.App.Ct. at 245. Second, in Mistishen, the court found that while the plaintiffs conduct might be viewed as “socially desirable, it fell far short of the level of importance necessary to warrant a conclusion that her discharge violates public policy." Id. at 246. Mistishen involved the sale of poorly constructed pianos under a warranty that the pianos were of superior quality. The Court could not say that improper warranties regarding pianos rose to the level of a public policy concern because such unfair and deceptive practices did not have a significant impact on the general public. The same cannot be said in this case. This case involves the loan practices of lending institutions. As recent events have shown, the effect of improprieties in the lending practices of financial institutions can have a profound effect beyond the institution’s own customers. Unlike Mistishen, the impact of such improprieties warrants a finding of a public policy exception that encourages employees to come forward and blow the whistle. For these reasons, this court holds that Massachusetts state law would afford the same protection afforded whistleblowers in 12 U.S.C. §1790b(a)(l).
2. The Defendant Is Not Entitled to Summary Judgment as a Matter of Law
Next, the court must consider whether the defendant has demonstrated the absence of a triable issue by producing evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party has no reasonable expectation of proving an essential element of its case at trial. See Flesner, 410 Mass. at 809. The defendant claims that the plaintiff has no reasonable expectation of proving that the defendant fired the plaintiff because he threatened to blow the whistle on McLaughlin’s suspicious loan activity. The court rejects the defendant’s claim because there are sufficient facts in the record from which a reasonable jury could infer that the defendant wrongfully terminated the plaintiff.
First, McLaughlin resigned from the Credit Union shortly after Veres made her presentation to the board, which included some of the original allegations about suspicious loan activity raised by the plaintiff. Second, Veres testified in her deposition that she prepared a report to the board providing a summary of what was taking place in the mortgage department, which included information about McLaughlin’s suspicious loan activities. Veres testified that she gave that report to McLaughlin to distribute at the meeting, but that after the meeting she reviewed the package of information and found that her memo had been altered. Third, the timing of the plaintiffs firing permits an inference that McLaughlin fired the plaintiff before the plaintiff could take his complaints any further. The Credit Union fired the plaintiff only a few weeks after Veres’ memo to McLaughlin asking him for his completed and signed loan applications. Since the plaintiffs discharge falls within the public policy exception to the at-will doctrine and the record contains a number of disputed material facts from which a reasonable juror may infer that the defendant wrongfully terminated the plaintiff, the defendant’s motion for summary judgment on Count I is denied.
E. Fraudulent Misrepresentation and Fraud
Since the plaintiffs claims regarding fraudulent misrepresentation and fraud involve the same set of facts and allegations, this court will analyze both claims in this section. “A claim for misrepresentation requires that a plaintiff show a false statement of material fact made to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment.” McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 575 (1995). The plaintiff alleges that he relied to his detriment on the following nine *399 fraudulent misrepresentations made by the defendant’s agent McLaughlin: (1) that three million dollars was readily available for lending; (2) that the plaintiff could name his own salary; (3) that the plaintiff would receive commissions on the loans he processed; (4) that McLaughlin would present the portfolio analysis the plaintiff prepared about the suspect loans to the board; (5) that the opening of the department would result in profit-sharing at the end of the first year; (6) that within one to two years, the Credit Union would be moving to a better location; (7) that within two years a specialized Credit Union Service Organization could be established just to handle mortgages; (8) that within a year, McLaughlin would implement a management compensation package that included car allowances, cell phone allowances, and laptop computers; and (9) that the plaintiff would be part of any and all management packages as the Vice President of the Mortgage Department.
1. Alleged Misrepresentation (1)— Three Million Dollars Readily Available
The plaintiff claims that, prior to coming to work for the defendant, McLaughlin stated that there were three million dollars readily available for immediate lending. The plaintiff believes these representations were fraudulent because the defendant actually had to borrow money to fund some of its lending. Essentially, the plaintiff understood McLaughlin’s statement to mean that the Credit Union had three million dollars in cash. The plaintiff contends that McLaughlin’s statements induced him to leave his job at Old Kent Mortgage and come work for the defendant.
“The first requirement to sustain a claim of misrepresentation is that the representation made must be false.’’ Zimmerman v. Kent, 31 Mass.App.Ct. 72, 78 (1991). The plaintiff has failed to produce sufficient evidence that McLaughlin’s statement was false. Both McLaughlin and Veres testified in their depositions that, while the Credit Union did not have three million dollars in cash, it did have treasury bills that could have been converted into cash. The plaintiff has not refuted that contention. Since the defendant had treasuiy bills that could be readily converted into cash, McLaughlin’s statement that the defendant had three million dollars readily available was not false.
2. Alleged Misrepresentations (2) .and (3) — Compensation and Commissions
These allegations essentially boil down to one allegation by the plaintiff that the defendant committed fraud by causing the plaintiff to believe that his compensation package had been approved by the board. For the first three months, the plaintiff received his salary and commissions in accordance with the proposal he gave to McLaughlin. The board was unaware that the plaintiff was receiving commissions. McLaughlin also claims that he was unaware that the plaintiff was receiving commissions. In fact, one of the reasons the board gave McLaughlin the option to resign was because, according to McLaughlin, he was unaware of the commissions that the plaintiff received. The plaintiff, however, has failed to produce evidence of harm. See McEneaney, 38 Mass.App.Ct. at 575 (detriment is an essential element of the fraud claim). In June of 2000, the board asked the plaintiff to take a $ 100 reduction in his commission payments. It is undisputed that the plaintiff acquiesced. Since the plaintiff has failed to produce sufficient evidence from which a reasonable jury could infer harm, the defendant is entitled to summary judgment on this allegation.
3.Alleged Misrepresentation (4)— Portfolio Analysis
The plaintiff claims that McLaughlin said he would give the plaintiffs portfolio analysis, which discussed his concerns about suspicious loan activity, to the board. The board never saw the plaintiffs portfolio analysis. In order to sustain a claim of fraud, the plaintiff must show that he was damaged as a result of the false representation. See id. The plaintiff has not provided any evidence, other than mere assertions, of a causal connection between his firing and the defendant’s alleged conduct. The plaintiff does not allege that the board fired him as a result of his failure to present his analysis to the board. Since the defendant has shown that the plaintiff cannot prove an essential element of his fraud claim on this allegation, the defendant is entitled to summary judgment.
4.Alleged Misrepresentations (5)-(9) — Additional Benefits
The plaintiff has not produced sufficient facts to show that these statements were false. Each of them deals with a promise to do something at the end of the year or after the end of the year. Since the plaintiff was discharged before these promises were supposed to take effect, it is unclear whether these statements would have materialized. Since the plaintiff has not produced sufficient facts from which a juror could conclude that these statements were false, the defendant is entitled to summary judgment as to this allegation.
For the above reasons, the court grants the defendant’s motion for summary judgment on Counts III and IV of the plaintiffs complaint.
ORDER
For all of the foregoing reasons, it is hereby ORDERED that the defendant’s Motion for Summary Judgment is DENIED as to Count I; and is ALLOWED as to Counts II, III and IV.

At the time, DiGaetano worked as a mortgage originator for Old Kent Mortgage.

The plaintiff also claims that the court should bar the defendant’s motion because of a failure to comply with Superior Court Rule 9A(5). In particular the plaintiff claims that the defendant violated the rule by not providing the court with a clear and concise list of material facts not in dispute. In the defendant’s motion, the defendant did occasionally provide *400 improper statements about facts not in dispute. For example, it was completely disingenuous for the defendant to list as an undisputed fact that the plaintiff had an at-will employment contract with the defendant. While this may be true as a matter of law, the type of contract the plaintiff had with the defendant is at the heart of the plaintiffs case and is clearly a fact which the plaintiff would contend is profoundly in dispute. Despite these problems with the defendant’s motion, this court finds that when taking the defendant’s motion as a whole, the defendant did not violate the spirit and the purpose of the rule.

The plaintiff does not allege that the defendant breached an oral contract to pay him commissions by failing to pay all commissions that he had earned. The court takes no position on the merits of such a claim.

The facts in Simas are similar to the facts here. In Simas, the plaintiff worked for a federal credit union. Simas, 63 F.Sup.2d at 110. Simas argued that she was fired because be defendant learned that she informed the NCUA about a suspicious loan involving the CEO of the company. Simas v. First Citizens’ Federal Credit Union, 170 F.3d 37, 42 (1999). Simas considered the circumstances surrounding the loan suspicious because the CEO had arranged the loan herself, it was the largest loan in the company’s history, the defendant had a longstanding policy against making commercial loans, and several board members had expressed concern that an appraisal had been inflated. Id. As in Simas, this case involves a claim that the plaintiff was terminated for revealing suspicious loan activity engaged in by the CEO of a federal credit union.