Gaziano, J.
The plaintiff, Sunil Kalra (“Kalra”) brought this action against the defendants, Viking Networks, Inc., Peter W. Adler, and Roland A. LeBlanc, officers of Viking (“Viking”), seeking payment of $100,000 that he claims Viking owes him as salary for the 2001 calendar year. The complaint set forth four counts; Count I — violation of the Massachusetts Wage Act, G.L.c. 149, §148B; Count II — breach of contract; Count III — quantum meruit; and Count IV — unjust enrichment. The matter is before the court on Viking’s motion for partial summary judgment on Count I and Count II, and on Kalra’s renewed cross motion for partial summary judgment on Count I. For the following reasons, defendants’ motion for partial summary judgment is DENIED, and plaintiffs renewed cross motion for summary judgment is DENIED.
BACKGROUND
In April 2000, Kalra entered into discussions with defendants Peter W. Adler (“Adler”) and Roland A. LeBlanc (“LeBlanc”), who were working on an e-commerce business plan to be named Viking Networks, Inc. Viking was interested in Kalra’s reported computer skills and wanted someone to assist in writing software programs in exchange for an equity interest in the company. The company was incorporated in July 2000, with Adler as President and LeBlanc as Chairman. On August 17, 2000, Adler emailed Kalra asking that he “give” them around ten hours a week. In the email, Adler stated “[s]o the hope is that we will raise money soon and can pay you a real salary, but of course it’s a question mark.” He also asked what Kalra was thinking about for a salary in a start-up with an equity ownership, and wrote “I’ve got you in the plan for $100,000 in 2001, then $125,000, then $150,000.” The following day, August 18, 2000, Kalra emailed back stating that he accepted the terms in the letter.
*695 Thereafter, Kalra started working for Viking with the title of Chief Technical Officer. He was terminated 17 months later, on January 2, 2002, for failure to perform the duties of a programmer. During the time that he worked for Viking, Kalra was not paid any money. He filed the instant action in June 2002. On February 9, 2004, Kalra’s motion for partial summary judgment on Count I was denied by the court, Chernoff, J. A trial was originally scheduled for August 23, 2004. Five days before the scheduled trial, in response to a request for production, Kalra produced copies of his income tax returns, which indicated that he collected unemployment benefits for the calendar year 2001.
DISCUSSION
A. THE DOCTRINE OF JUDICIAL ESTOPPEL DOES NOT APPLY
Viking argues that since Kalra was collecting unemployment benefits during the period in question, he is barred by the doctrine of judicial estoppel from asserting a claim for a salary. Viking maintains that, since Kalra held out that he was unemployed during 2001, he cannot assert that he was an employee of Viking during that year. Kalra claims that the doctrine of judicial estoppel does not apply, and that he is entitled to summary judgment as a matter of law, since he was an employee of Viking who did not receive a salary in violation of G.L.c. 149, §148B.
Judicial estoppel “bind[s] a party to his judicial declarations and prevents] him from contradicting them in a subsequent proceeding involving the same issues and parties.” Paixao v. Paixao, 429 Mass. 307, 310 (1999). In that case the Supreme Judicial Court cited East Cambridge Sav. Bank v. Wheeler, 422 Mass. 621 (1996), where it had noted that the doctrine of judicial estoppel would not allow a party who had successfully maintained one position in a trial to assume a contrary position in a subsequent trial. Id. at 309. The Paixao court pointed out that the purpose of the doctrine was to protect the integrity of the judicial process. Id. It further stated that oral agreements are honored because “their acknowledgment in open court lends credibility and certainty.” Id.
Viking cites Fay v. Federal Nat’l Mortg. Ass’n, 419 Mass. 782 (1995), and Beal v. Board of Selectman of Hingham, 429 Mass. 535 (1995), for the proposition that judicial estoppel does not apply solely to previous judicial proceedings. Defendants’ use of Fay and Beal are inapposite. In Fay, the Court noted that judicial estoppel would certainly apply where a party had successfully asserted an inconsistent position in a previous judicial proceeding (in that case a trial). 419 Mass, at 788 (emphasis in original). However, the court did not decide that case on the doctrine of judicial estoppel, but rather held that the plaintiffs complaints were barred by issue preclusion. Id. at 789.
In Beal, the plaintiff police officer brought a claim of handicap discrimination against her employer. 419 Mass. at 537-38. She had been injured at work and applied for accidental disability retirement, claiming injuries to her back, neck, and head. Id. at 537. She subsequently requested that she be allowed to return to work performing “light duty.” Id. The Hingham retirement board refused to allow her to return to work and she filed a discrimination claim. A judge of the Superior Court allowed the Board’s motion for summaiy judgment. Id. at 538. The Court affirmed, noting that discrimination based on a handicap occurs when, inter alia, an employer fails to rehire, because of his handicap, a person allegedly handicapped who can perform the essential functions of the job. Id. at 539-40. The Court found that the plaintiff had not proven that she could perform the essential functions required of a police officer, and therefore did not have a reasonable expectation of proving each element of her prima facie case. Id. at 541-42. The court did note that the plaintiff had claimed that she was physically unable to return to work when she filed for disability retirement and social security benefits, and that therefore she could not now successfully claim that she is capable of performing the essential functions of the job. Id. at 543. However, the court merely pointed out the inconsistency of her positions, and did not mention the doctrine of judicial estoppel. Id. The court’s decision rested on its determination that she could not perform the essential functions of the job, not on her contradictory positions. Id. at 542-43.
B. GENUINE ISSUES OF MATERIAL FACT ARE RAISED AS TO WHETHER VIKING VIOLATED G.L.c. 149, §149B THAT WOULD PRECLUDE SUMMARY JUDGMENT
Kalra claims, in his renewed cross motion for summary judgment, that Viking’s failure to pay him the $100,000 stated in Adler’s email constitutes a clear violation of the Massachusetts Wage Act and that therefore summary judgment should be granted as a matter of law. Although G.L.c. 149, §148 is quite specific in defining an employer, an employee, and a salary distribution schedule, there are genuine issues of material fact as to whether Viking clearly informed Kalra of the speculative nature of the endeavor, and that the company would have to be financed before salaries could be drawn. There is also a genuine issue of material fact whether Kalra understood this and was therefore on notice of the likelihood that he would not draw a salary until venture capital was invested in Viking.
The general purpose of the G.L.c. 149, §148 was “to assure that employees are paid their wages on a weekly basis.” Prozinski v. Northeast Real Estate Services, LLC., 59 Mass.App.Ct. 599, 603 (2003) (internal citations and quotations omitted). The intention was to “protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages.” Cumnata v. Blue Cross Blue *696 Shield of Massachusetts, Inc., 113 F.Sup.2d 164, 167 (D.Mass. 2000). Section 148 of G.L.c. 149 outlines a payment schedule for employers to compensate employees. An employer is any “president and treasurer of a corporation and any officers or agents having the management of such corporation ...” Section 148B of G.L.c. 149 defines an employee as any person performing services unless “(1) such individual is free from control and direction in connection with the performance of the service, both under his contract and in fact; and (2) such service is performed outside of all places of business of the employer; and (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.” G.L.c. 149, §148B.
Massachusetts courts have interpreted the. statute narrowly. Prozinski, 59 Mass.App.Ct. at 603. Courts have defined “wages” narrowly as well. In Commonwealth v. Savage, the Massachusetts Appeals Court found that only definitely defined commissions were included in the category of wages. 31 Mass.App.Ct. 714, 716 (1991). In Cumnata, the District Court for the District of Massachusetts found that commissions based on a contingency did not fall under the protections of G.L.c. 149, §148. 113 F.Sup.2d at 168. See also Dennis v. Jagger, Smith & Stetler, P.C., 11 Mass. L. Rptr. 567, 2000 WL 782946 at *1 (Mass.Super. Apr. 10, 2000) (Ball, J.) (where the court distinguished wages, including assured compensation and equivalents, from compensation “triggered by contingencies” which were outside the scope of the Wage Act).
Kalra and Viking are employee and employer as defined in G.L.c. 149, §§148 and 148B. Kalra was under the control and direction of Adler and LeBlanc— indeed they terminated him. The service he performed was within the scope of Viking’s usual course of business — starting up a company. And Kalra was not, as far as this court knows, engaged in any similar trade, business, profession, or occupation. Furthermore, the statute prohibits any person, by contract with an employee, from exempting himself from its provisions. G.L.c. 149, §148.
However, even though Kalra qualifies as an employee and Viking as an employer, there are genuine issues of material fact as to whether the agreement between them allowed for a salary contingent on sufficient funding. The initial email from Adler offered equity in the company at first and expressed the hope that they would raise enough money to pay Kalra a “real salary,” stating that it was “a question mark.” A jury could find that the express offer was that Kalra would only be paid a salary when the company had sufficient capital, and that his acceptance of these terms was an understanding of the contingent nature of the salary offer of $100,000 for 2001. In Sword v. Biofertec, Ltd., a Superior Court judge found that, since both parties understood that the company was not obliged to pay a salary until sufficient funds were available, there was no violation of G.L.c. 149, §148. 16 Mass. L. Rptr. 205, 2003 WL 21246200 at *5 (Mass .Super. March 31, 2003) (Brady, J.). In that case, the written agreement clearly outlined the contingency issue.
Furthermore, no one else in the firm earned any salary during the period in question. There are clearly factual questions in the case at bar as to whether the defendant adequately explained that Kalra’s salary was contingent on acquiring capital, as well as to whether Kalra understood this contingency. Therefore, defendants’ motion for summary judgment on Count I is denied. For the same reasons, plaintiffs renewed cross motion for summary judgment on Count I is denied.
C. THE CONTRACT IS NOT BARRED BY THE STATUTE OF FRAUDS
Viking claims that Adler’s email of August 17,2000, and Kalra’s answering email of August 18, 2000, constitute a contract that is barred by G.L.c. 259, §1, Massachusetts’ statute of frauds.[2] Viking argues that the offer of a three-year salary increase was a definite employment term of three years that is invalid unless in writing, because it cannot be performed in one year, pursuant to G.L.c. 259, §1. Kalra argues that the statute of frauds does not apply since the agreement is indefinite.
An “oral contract of permanent employment or employment for an indefinite period is enforceable under the statute because the employee may die in a period of less than one year or the employer may go out of business.” Meng v. Trustees of Boston Univ., 44 Mass.App.Ct. 650, 652 (1998). On the other hand, an oral contract that specifies a definite term of employment in excess of one year, or for one year to start more than a day after the making of the contract, is not enforceable unless in writing. Id. In Meng, an oral agreement to give the plaintiff a fourteen-month severance package was invalid, since payment over a fourteen-month period could not be performed within one year. Id. The understanding that the agreement is not to be performed within a year “must be absolute and certain, and not to depend on any contingency.” Id. (internal citations and quotations omitted). If the relationship could have terminated at any time, it is axiomatic that the contract could be terminated as early as the day after it was formed. Boyle v. Douglas Dynamics, LLC., 292 F.Sup.2d 198, 211 (D.Mass. 2003) (applying Massachusetts law).
Interpretation of unambiguous language in a contract is a question of law for the court to decide. Edwin R. Sage Co. v. Foley, 12 Mass.App.Ct. 20, 28 (1981). Ambiguity exists when the language of the contract is susceptible to more than one meaning. Jefferson Ins. Co. v. City of Holyoke, 23 Mass.App.Ct. 472, 474 (1987). A party must show that “reasonably intelligent persons would differ as to which one of two or more *697 meanings is the proper one.” Id. at 475. However, the existence of a controversy between parties does not create ambiguity. Id. The essence of ambiguity is where the contract itself does not reveal an answer to the question at issue. President & Fellows of Harvard College v. PECO, 57 Mass.App.Ct. 888, 895 (2003). Where there is no ambiguity, the court should construe the words of the contract in their “usual and ordinary sense.” Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998) (internal quotations and citations omitted). See also Save-Mor Supermarkets, Inc. v. Skelly Detective Serv., Inc., 359 Mass. 221, 226 (1971) (a court must ascertain the fair meaning of the language and apply it to the subject matter).
In the instant case, the terms of the agreement are not highly ambiguous, but sufficiently so to preclude summary judgment. Although the email does outline a salary scale increasing over a three-year period, it is unclear if this three-year period is sufficiently definite to require that it be in writing in order to satisfy the statute of frauds. A reasonable jury could conclude either that the term of employment was for three years, or that it was indefinite, and could be terminated the day after the agreement should some event occur, such as the bankruptcy of the start-up company.
There are genuine issues of material fact as to the meaning of the contract, and therefore the defendants’ motion for summary judgment on Count II is denied.
ORDER
It is therefore ORDERED that defendants’ motion for partial summary judgment on Counts I and II be DENIED, and that plaintiffs renewed cross-motion for summary judgment on Count I be DENIED.

Section 1 of G.L.c. 259 states, in relevant part, that no action shall be brought “upon an agreement that is not to be performed within one year from the making thereof... unless [it] is in writing and signed by the party to be charged ..."