Cosgrove, Robert C., J.
Plaintiff Link Development filed this action against defendants Stuart Sojcher, Robert Wallace Jr., individually and his capacity as trustee of the BD Lending Trust, and Steven Ross alleging their participation in a fraudulent loan and mortgage transaction.
This matter is before the court on Link’s Renewed Emergency Motion to Enforce Settlement Agreement as Stated on the Record and the Lending Defendants’[2] Emergency Cross Motion to Enforce Settlement Agreement. For the reasons discussed below, Link’s motion is allowed and the Lending Defendants’ crossmotion is denied.
Background
On December 15, 2006, Link filed a Verified Complaint alleging the following facts.
The highest bidder at a July 12, 2005 foreclosure sale of property known as Off Route 1 and Lynn'Fells Parkway at Sanders Drive and 1-12 Denise Drive (“the Property”) assigned his rights to the Property to Link. Link retained Attorney Sojcher as the closing attorney. Desert Pine, LLC provided financing for the sale. Essam Al Tamini was the sole member of both Link and Desert Pine. Link instructed Sojcher to record the foreclosure deed, register Desert Pine as a foreign limited liability company in Massachusetts, and record a $2 million mortgage on the Property in favor of Desert Pine. Sojcher took no action for more than a year.
On September 29, 2006, Sojcher registered Desert Pine as a limited liability company but named himself, not Al Tamini, as manager. He also filed a fraudulent certificate of amendment and annual report for Link, substituting himself as Link’s manager. Sojcher filed a declaration of trust for the formation of a nominee trust, BD Lending, by Wallace. Sojcher, working with Attorney Ross, then obtained a $700,000 loan to Link from BD Lending. In October of 2006, Link examined the Essex County Registry, discovered the fraudulent *291 mortgage, and farther discovered that Sojcher had filed a fraudulent Assignment of Leases and Rent to BD Lending, and a fraudulent Subordination Agreement giving BD Lending priority over the Desert Pine mortgage. Link ordered Sojcher, Ross and Wallace to undo the fraudulent filings at the Registry and Secretary of State’s Office. On October 25, 2006, Sojcher assured Link of the discharge of the BD Lending mortgage. However, Link subsequently learned that there had been no discharge. On November 16, 2006, the Supreme Judicial Court temporarily suspended Sojcher from the practice of law.
Count I of Link’s Verified Complaint alleges fraudulent foreclosure, Count II alleges fraud, Count III alleges slander of title, Count IV alleges conversion, Count V alleges violation of Chapter 93A, and Count VI alleges civil conspiracy. Count VII seeks a declaratory judgment concerning the parties’ rights and obligations under the BD Lending mortgage, and Count VIII seeks injunctive relief against a foreclosure on the Property initiated by BD Lending.
The docket and exhibits filed in connection with the parties’ cross motions reveal the following additional facts. This court (Spurlock, J.) denied Link’s motion for a preliminary injunction on January 3, 2007. Ross filed an answer asserting a variety of affirmative defenses. Wallace filed a similar answer as well as an Amended Counterclaim seeking equitable subrogation of BD Lending and alleging breach of the promissory note, fraudulent inducement, and violation of Chapter 93A. Wallace also filed a cross claim against Sojcher seeking indemnification and contribution, and alleging fraud and misrepresentation. Discovery proceeded on all these claims. Link filed a separate but virtually identical action in the Land Court, Land Court Mise. Case No. 07-336908, against the defendants.
Meanwhile, in October of 2007, another entity, RFF Family Partnership, gave Link a $1.4 million loan secured by a mortgage on the Property. Link defaulted on the RFF loan in 2008. In February of 2008, Link obtained a default against Sojcher in this action. On February 26, 2009, Link assigned the Desert Pine Mortgage to its current counsel, Russell & Associates (“Russell”), as security for outstanding legal fees incurred in connection with this action. In 2009, RFF foreclosed its mortgage and purchased the Property at foreclosure. On June 14, 2010, Wallace filed a motion to enforce settlement in this action, which was opposed by Ross.
In 2011, RFF filed suit against Link, Russell and the Lending Defendants in U.S. District Court seeking to discharge all other mortgages on the Property and recover on its loan. In that action, RFF seeks a declaratory judgment that the BD Lending mortgage is fraudulent and void, while Link contests the validity of RFF’s foreclosure. At some point, Russell filed suit against RFF in the Land Court seeking to establish the priority of its attorneys fee lien on the property.
On April 12, 2011, this court (Sanders, J.) denied Wallace’s motion to enforce a settlement in this action, stating:
material terms of agreement has no signature of [A1 Tamini] on General Release. No signature has ever [been] given and through counsel, [A1 Tamini] has expressly refused to do so[. B]ecause this was necessary condition to any stipulation of dismissal and to resolution of suit, the case is returned to the trial list.
In the summer of 2011, Link retained Attorney Peter Carr of Eckert Seamans to assist in its representation in this case.
Trial was scheduled for January 30, 2012. At that time, the parties reported to this court that the case was settled. Attorney Carr gave the following description of the settlement on the record (“the Reported Settlement”):
The material terms of the settlement [are] that the defendants will pay to the plaintiff 450,000 dollars cash as an initial payment upon execution of the settlement agreement. There will be, after that, three payments over a three year term of 650,000, 700,000 or 750,000 dollars. If they pay in the first year, it’s 650,000. If they pay in the second year, it’s 700,000. If they pay in the third year, it’s 750,000. So it’s not the total payment over those three years. It’s each individual payment.
So if they pay in the first year, it’s 650,000 dollars. If they pay in the second year, the total amount paid is 700,000. If they pay in the third, it will be 750,000 dollars additional.
Each of those years, there will be six percent interest that will accrue on that money. So six percent on 650 in the first year, if it’s paid in the first year. Then six percent on 700,000 if it’s paid in the second year. And then six percent if it’s paid in the third year on the $750,000. It’s not compound interest. It’s a straight interest calculation.
That will be secured. The payment obligation under that term payment if you will, will be secured by a conditional assignment of the current BD Lending mortgage back to Link, so that if there is a default, the mortgage will be—in essence will go away or otherwise taken care of.
Further terms are typical stipulation dismissal with prejudice of all claims and counterclaims, and I expect that they will be released as back and forth between the parties. I’m not sure if they can be generally released, because there may be some outstanding matters, but definitely with respect to this litigation.
Those are the material terms of the settlement, Your Honor, obviously to be documented, but I think I’ve accurately described it. I hope I have.
Counsel for Wallace and BD Lending Trust responded:
*292 The 450,000 dollars in initial cash payment, then there will be one payment of either 650, 700 or 750 depending on what year in which it’s made... I just want to make that clear. But otherwise we are in agreement.
Counsel for Ross was present but said nothing throughout this exchange. This court entered a 30-day order for entry of dismissal nisi as to all parties and all claims.
On Januaiy 31, 2012, Wallace/BD Lending’s counsel, Jeffrey Loeb, sent the following e-mail to Attorney Carr:
(Surprise) Contrary to what [Link’s principal] said the Desert Pine mortgage was absolutely and unconditionally assigned to Russell & Assoc. I need that mortgage discharged as I don’t want to end up in a situation where Link agrees that my client is first only to have Russell assert that the subordination is no good and that he is in first position. As we discussed the intent of the settlement is to have the title be as the parties appeared to have intended it to be in Sept/Oct ‘06.1 understand that you don’t control Russell & Assoc but I need your client to take care of that issue.
Carr responded by e-mail dated February 6, 2012: “As I indicated, I am not taking any position or making any representation with respect to the subordination or the Russell fee issue. Can we get some drafts going?”
On February 13, 2012, Loeb e-mailed Carr a proposed draft settlement agreement, paragraph 4 of which stated, “Link agrees to secure the discharge of any and all liens asserted by Russell & Associates, LLC against the [Saugus] properly previously owned by Link ...” This draft proposal also stated that the second $650,000, $700,000 or $750,000 payment was owed “[i]n the event that BD is successful in foreclosing on its mortgage or otherwise receiving payment to secure the discharge of the mortgage ...” Carr immediately responded by e-mail of the same date:
. . . there is a major problem with this draft. The back-side tiered payment was never conditioned on BD recovering on the mortgage, as you have drafted. The agreement was a payment evidenced by promissory note for a sum certain in the amount of $750,000 plus interest accruing at 6% per annum with principal and interest due within three years, with a reduced payment of either $650,000 plus 6% if paid within one year or $700,000 plus 6% interest if paid within 2 years. Your language of a conditional payment was not part of the agreement.
Loeb sent Carr a draft agreement on February 17, 2012 which retained the language concerning discharge of the Russell lien, but removed the “in the event of’ language with respect to the second payment. The same day, Carr sent his own draft agreement to counsel, omitting the provision concerning release of Russell’s lien. Counsel for Ross commented on this draft as follows: ‘There is no reference to secure the discharge of the Russell & Associates lien or other documentation establishing the priority of BD’s mortgage, which was a condition of the agreement. Is there a reason you chose to exclude it? Link’s sole recourse for any non-payment of the note is under the mortgage.” On February 28, Carr sent a reply e-mail which stated in relevant part:
A release/discharge of the Russell lien or documentation to evidence priority was not a material term on which Link agreed to settle. I made clear throughout that I was authorized to settle this lawsuit with these parties, and was not making any representations about other parties or other claims. The obligation under the note secured by a conditional assignment of the mortgage is limited to BD Trust. However, I do not agree that the only recourse is under the mortgage. If there is a default, Link is permitted to pursue any and all remedies including its security.
Meanwhile, on February 27, 2012, in response to an emergency motion filed by Link, this court extended the nisi period to March 20, 2012. On March 15, Link filed its Renewed Emergency Motion to Enforce Settlement Agreement as Stated on the Record. On March 20, the Lending Defendants filed their Emergency Cross Motion to Enforce Settlement Agreement. In an affidavit, Loeb avers that “[d]uring the parties’ settlement discussions on Januaiy 30th, the conditional nature of the second settlement payment was clearly understood and agreed to by the parties.” He further avers that “during the parties’ settlement discussions on Januaiy 30th, counsel for the Lending Defendants expressly stated to Link’s counsel that a settlement must include a discharge of the Russell & Associates lien and the Desert Pine Mortgage. Both Attorney Robert Daut, of counsel to Russell & Associates, and Attorney Peter Carr were present during those discussions.” Finally, Loeb avers that “during those negotiations, Peter Carr, co-counsel for Link, stated to Robert Daut, of Russell & Associates, that Russell & Associates could not ethically interfere with Link’s ability to settle the case for its own benefit.” Loeb does not aver that Link’s counsel ever affirmatively agreed to discharge the Russell lien as part of the settlement.[3]
Discussion
The Lending Defendants do not assert the absence of a meeting of the minds between themselves and Link with respect to settlement. Cf. Basts Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. 29, 39, rev. den., 450 Mass. 1109 (2008) (analyzing terms of proposed settlement agreement to determine whether parties intended to create binding contract). Rather, they contend that the Reported Settlement omitted two critical terms to which the parties had agreed: a requirement by Link that it obtain a discharge from Russell of its lien and mortgage, and a provision *293 making BD Lending’s second payment conditional on its ability to recover on the mortgage and making re-assignment of the mortgage to Link its sole recourse for BD Lending’s failure to make the second payment.
An evidentiaiy hearing is unnecessary because the Lending Defendants failed to object to the omission of these alleged provisions when opposing counsel recited, in open court and on the record, the material terms to which the parties agreed. If material agreed-upon terms were omitted from the recitation in open court, experienced and zealous counsel would be expected not to remain silent but rather, to object in order to correct the record. See Innis v. Innis, 35 Mass.App.Ct. 115, 117 (1993) (denying on the papers and .without an evidentiary hearing wife’s effort to undo divorce settlement, where at time agreement announced to court, wife’s counsel was aware of matters later alleged to be unfair but failed to place them on record); Petition of Mal de Mer Fisheries, Inc., 884 F.Sup. 635, 638-39 (D.Mass. 1995) (enforcing settlement without evidentiary hearing where client was told amount of settlement and told counsel to “go ahead” with it); Wilson v. Wilson, 46 F.3d 660, 664-65 (7th Cir. 1995) (court need not hold evidentiary hearing to determine whether parties reached agreement on material terms where settlement terms were previously put on record in front of court and party did not object at that time). See also Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. at 37 (court deemed parties to have reached agreement on all material terms of contract where one party articulated essential terms in e-mail and other party responded, “correct”). Cf. Malave u. Carney Hosp., 170 F.3d 217, 221 (1st Cir. 1999) (evidentiary hearing required on motion to enforce settlement where existence of settlement not previously conceded by parties in settlement conference or hearing before court); Collie v. Near, 829 F.2d 888, 889 (9th Cir. 1987) (evidentiaiy hearing required to determine whether there was meeting of minds where terms of settlement never announced in open court, and parties gave conflicting versions of material term with respect to method of securing payment).
The Reported Settlement on its face appears to be a complete, rational, and clear agreement. Although the parties contemplated a written memorandum, the Lending Defendants gave no indication on January 30, 2012 that opposing counsel had misstated the material terms of the settlement or omitted terms deemed essential to them. Nor did they indicate that the parties intended to make additions of substance when they reduced the agreement to writing. Accordingly, the Lending Defendants should not be afforded an eviden-tiary hearing to attempt to prove additional terms of the settlement. See The Gen. Convention of the New Jerusalem in the United States of Arner,, Inc. v. MacK-enzie, 449 Mass. 832, 835-36 (2007) (discussing parole evidence rule).
The Lending Defendants argue in the alternative that an evidentiaiy hearing is required because certain terms in the Reported Settlement are ambiguous. They contend that the reference in the Reported Settlement to general releases is ambiguous and was intended to include a release of the Russell lien. They further contend that the reference to the second payment being secured by the mortgage is ambiguous and was intended to condition the second payment on BD Lending’s recovery under the mortgage.
The preliminary inquiry into whether an agreement is ambiguous is a question of law for the court. Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008); Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. at 36. Provisions are not ambiguous simply because the parties have developed different interpretations of them. Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. at 36. Rather, genuine ambiguity requires language that is susceptible of a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken. Bank v. Thermo Elemental, Inc., 451 Mass, at 648; Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. at 36-37. In determining the existence of ambiguity, the court must first examine the language of the contract by itself, independent of extrinsic evidence concerning the drafting history, circumstances of execution, or intention of the parties. Bank v. Thermo Elemental, Inc., 451 Mass, at 648.
The Reported Settlement states: “Further terms are typical stipulation dismissal with prejudice of all claims and counterclaims, and I expect that they will be released as back and forth between the parties. I’m not sure if they can be generally released, because there may be some outstanding matters, but definitely with respect to this litigation.” This language is not ambiguous, because it clearly concerns the standard release of claims between the parties to the litigation, and cannot reasonably be interpreted to include a release of an attorneys fees lien or mortgage held by a non-party. See Gen. Convention of the New Jerusalem in the United States of Amen, Inc. v. MacKenzie, 449 Mass, at 835 (where words of contract are clear, court construes them in usual and ordinary sense).
In addition, the Reported Settlement states, after describing the three potential amounts for the second payment: “That will be secured. The payment obligation under that term payment if you will, will be secured by a conditional assignment of the current BD Lending mortgage back to Link, so that if there is a default, the mortgage will be—in essence will go away or otherwise taken care of.” Reading the Reported Settlement as a whole, this language on its face is not reasonably susceptible to the Lending Defendants’ interpretation that the second payment is conditioned on BD Lending’s successful enforcement of the mortgage. The Reported Settlement states that after the initial $450,000 payment, “there will be, after that” a *294 second payment, without any qualification. Moreover, the inclusion of six percent interest accruing on the second payment is consistent with an absolute obligation to make that payment, not a payment conditioned on BD Lending’s successful recoveiy. Thus, this provision is not ambiguous so as to entitle the Lending Defendants to an evidentiary hearing on the terms of the parties’ agreement.[4]
Nor is there any other ground on which to hold an evidentiary hearing. The Lending Defendants contend that they relied on the discharge of the Russell lien and the conditional nature of the second payment in agreeing to settle, and unless these two conditions are included in the settlement as enforced, they will be deprived of the key benefit of the settlement because they might still have to litigate the validity of their mortgage against Russell. Formation of a binding contract depends on the parties’ objective manifestations of agreement, notwithstanding their subjective beliefs or intent. T.F. v. B.L., 442 Mass. 522, 527 (2004); Polaroid Corp. v. Rollins Environmental Serv. (NJ), Inc., 416 Mass. 684, 696-97 (1993); Brewster Wallcovering Co. v. Blue Mt. Wallcoverings, Inc., 68 Mass.App.Ct. 582, 596 n.35 (2007). Here, where the defendants did not object to opposing counsel’s recitation on the record of the material terms of the agreement and the terms of the Reported Settlement are unambiguous, the Lending Defendants’ subjective understanding of the terms or subjective intent to be bound only upon additional terms is irrelevant.
Further, although Loeb avers that attorneys from Russell were present during the negotiations and Link’s counsel told Russell it could not ethically interfere with the settlement, he does not aver that Link or Russell made a specific misrepresentation with respect to the terms of the settlement.[5] Accordingly, there is no basis for an evidentiary hearing. Cf. Russell v. Puget Sound Tug & Barge Co., 737 F.2d 1510, 1511 (9th Cir. 1984) (abuse of discretion to deny motion for rescission of settlement agreement without eviden-tiary hearing where private investigator’s video of injured seaman called into question degree of his disability, raising issue of whether employer was fraudulently induced to enter settlement). See also Hubbard v. Peairs, 24 Mass.App.Ct. 372, 375 (1987) (on motion to enforce settlement, judge held eviden-tiary hearing to resolve attorney’s alleged lack of authority to enter into settlement on plaintiffs behalf); McGee v. Cartoon Network, Inc., 383 Fed.Appx. 12, 14 (1st Cir. 2010) (court erred in enforcing settlement agreement without evidentiary hearing where there was material dispute as to authority of plaintiffs counsel to enter binding settlement); Bandera v. Quincy, 344 F.3d 47, 52 (1st Cir. 2003) (evidentiary hearing necessary to resolve disputed facts about whether plaintiff was coerced into signing settlement agreement and whether parties entered into contemporaneous side agreement to later modify settlement under certain circumstances); Marston v. United States, 2012 U.S.Dist. LEXIS 29140 at *12-13 (D.Mass. 2012) (evidentiary hearing required on motion to enforce settlement agreement where papers raised material issue as to plaintiffs mental capacity to agree).
Case law has “consistently emphasized the qualities of seriousness and commitment characterizing a settlement agreement reported to a trial court.” Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. at 42. The gravity attributable to a report of settlement weighs heavily as circumstantial evidence of the parties’ intent to be bound by its communication in open court. Id. at 44. The equitable doctrine of judicial estoppel, which binds a party to its judicial declarations and prevents it from contradicting them in a later proceeding, prevents the repudiation of an oral settlement announced to the court because an acknowledgment in open court under oath is deemed credible and reliable. Paixao v. Paixao, 429 Mass. 307, 309 (1999); Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. at 42. The primaiy concern of the doctrine is to protect the integrity of the judicial process, which would be ill served if litigants, attorneys and judges could not rely on declarations of settlement made to the court. Correia v. DeSimone, 34 Mass.App.Ct. 601, 604 (1993). “It defies logic and fundamental principles of fairness to allow a represented party who has sought justice in a forum to contradict and undermine an agreement it reached and acknowledged in that same forum, especially when the judge and other litigants appear to have relied on that acknowledgment.” Id. Accordingly, Link is entitled to enforcement of the Reported Settlement.
Order
For the foregoing reasons, it is ordered that Link’s Renewed Emergency Motion to Enforce Settlement Agreement as Stated on the Record be allowed and the Lending Defendants’ Emergency Cross Motion to Enforce Settlement Agreement be denied.
The court will enforce the Reported Settlement entered into on January 30, 2012. The parties and counsel of record shall prepare, execute and file a written agreement with this court on or before June 8, 2012. Said agreement shall conform to the terms previously reduced to writing by Link’s counsel and submitted to the court as Exhibit 5 to Paper #80: “Response and Opposition of Plaintiff Link Development, LLC to Lending Defendants’ Cross Motion to Enforce Settlement Agreement.”
Counsel shall prepare and sign a stipulation of dismissal and file it with this court and the Land Court within five (5) days after execution of that agreement.
The court declines to award attorneys fees in connection with enforcement of the settlement. Each party shall bear its own costs.

he Lending Defendants are Wallace, BD Lending Trust, and Ross.

Carr has not filed an affidavit in connection with these cross motions. Defendants represented at oral argument that the expected witnesses in an evidentiary hearing, if granted, would be Loeb and Carr.

Even if this Court concluded that this provision was ambiguous as applied to the subject matter of this lawsuit, see Robert Indus., Inc. v. Spence, 362 Mass. 751, 753 (1973), the extrinsic evidence presented by the parties fails to support the Lending Defendants’ interpretation. In response to defendants’ draft conditioning the second payment, Link immediately responded: ‘The back-side tiered payment was never conditioned on BD recovering on the mortgage, as you have drafted . .. Your language of a conditional payment was not part of the agreement.” Wallace/BD Lending removed the condition from their next draft, thereby acquiescing to Link’s interpretation. Thereafter, they continued to comment on the absence from subsequent drafts of the alleged Russell lien term, while remaining silent on the absence of any condition for the second payment. Cf. Basis Tech. Corp. v. Amazon.com, Inc., 71 Mass.App.Ct. at 41 (finding binding settlement based on terms articulated in court where plaintiff consistently pressed for document containing those terms in subsequent communications).

In their brief, the Lending Defendants state: “The conduct of Link’s co-counsel can only be described as intentionally misleading: in order to arrive at a settlement agreement, Link led the Lending Defendants to believe that neither Link nor its counsel would dispute the priority of the Trust’s mortgage.” (Emphasis in original.) Loeb’s affidavit, however, stops short of alleging specific fraudulent statements by opposing counsel concerning the Russell lien.